**AFFIRM; Opinion Filed June 13, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00263-CV**

**JMJ ACQUISITIONS MANAGEMENT, LLC, Appellant**

**V.**

**TERRY L. PETERSON AND TEXAS WORKFORCE COMMISSION, Appellees**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-02746-D**

**OPINION**

Before Justices Francis, Lang, and Evans
Opinion by Justice Evans

JMJ Acquisitions Management, LLC appeals from the trial court's summary judgment affirming a wage award made by the Texas Workforce Commission to Terry L. Peterson under Chapter 61 of the Texas Labor Code. JMJ brings three issues generally contending the trial court erred in affirming the award because the competent summary judgment evidence showed the TWC lacked jurisdiction over a portion of Peterson's wage claim and the amount awarded was incorrect. Because we conclude the TWC had jurisdiction over Peterson's entire claim and the award was supported by substantial evidence, we affirm the trial court's judgment.

**BACKGROUND**

Terry L. Peterson was an employee of JMJ Acquisitions Management, LLC. During the course of Peterson's employment, JMJ began to suffer financial difficulties and Peterson agreed to reduce his salary from $150,000 per year to $100,000 per year beginning on November 1,

2008. Peterson received the reduced salary until February 2009. At that point, Peterson contends, he was told by Timothy Barton at JMJ that the company could not afford to pay him his regularly scheduled salary, but wanted him to continue working and be paid at a later date.

Beginning in February 2009, Peterson worked without receiving any wages, although he was reimbursed for out-of-pocket expenses that related to company business. According to Peterson, Barton promised him he would receive all of his back wages on September 25. Peterson did not receive any payment on that date and, on October 2, he resigned from the company.

On November 18, 2009, Peterson filed a wage claim with the Texas Workforce Commission stating he was owed wages for the full time period that he did not receive his salary. The TWC agreed and awarded Peterson $66,000 in unpaid wages. JMJ brought this suit for judicial review of the decision.

In its petition, JMJ asserted that the TWC had exceeded its statutory authority by awarding Peterson wages that were owed more than 180 days before he filed his wage claim. The TWC filed a motion for summary judgment arguing that substantial evidence supported the TWC's decision as a matter of law because the evidence showed that JMJ agreed to pay all of the wages owed to him on September 25, which was within 180 days of the date he filed his claim. After reviewing the summary judgment evidence, the trial court affirmed the TWC's award. Peterson then brought this appeal.

## ANALYSIS

### I. Standard of Review

The trial court reviews a decision of the TWC by trial de novo to determine whether the decision is supported by substantial evidence. *See* TEX. LAB. CODE ANN. § 61.062 (West 2006). Under the substantial evidence standard of review, the issue is whether the evidence introduced

before the trial court shows facts in existence at the time of the TWC decision that reasonably support the award. *See Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). The trial court makes its determination based on the evidence presented at trial, rather than the evidence presented at the TWC hearing. *See Direct Communications, Inc. v. Lunsford*, 906 S.W.2d 537, 541 (Tex. App.—Dallas 1995, no writ). The evidence heard at the TWC hearing is not per se admissible in the trial de novo, but it may be considered by the trial court if properly introduced. *Id*. at 540.

The determination of whether the TWC's decision was supported by substantial evidence is a question of law. *Id*. at 541. The trial court may not set aside the TWC's decision merely because it would have reached a different conclusion. *See Mercer v.* Ross, 701 S.W.2d 830, 831 (Tex. 1986). Nor may the trial court set aside the decision because the testimony was conflicting or disputed or because it did not compel the result reached by the agency. *See Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Substantial evidence must be more than a scintilla, but the evidence in the record may actually preponderate against the decision and, nonetheless, amount to substantial evidence supporting the decision. *See Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). The agency's decision carries a presumption of validity and may be set aside only if it was made without regard to the law or the facts and, therefore, was unreasonable, arbitrary, or capricious. *See Collingsworth*, 988 S.W.2d at 708.

There is no restriction on summary judgment in a case tried under the substantial evidence rule. *See Lunsford*, 906 S.W.2d at 542. When reviewing a summary judgment granted by the trial court in its de novo review of a TWC decision, we determine whether the summary judgment evidence established, as a matter of law, that substantial evidence existed to support the TWC's decision. *Id*.

## II. The TWC's Jurisdiction

In its first and second issues, JMJ contends the trial court erred in granting summary judgment in favor of the TWC because the competent summary judgment evidence showed that the TWC decision included an award of wages outside its jurisdiction. Specifically, JMJ argues the TWC's award violates section 61.051(c) of the Texas Labor Code, which requires a wage claim to be filed no later than 180 days after the date the wages claimed became due for payment. *See*, TEX. LAB. CODE ANN. § 61.051(c) (West Supp. 2012). The statute explicitly makes the 180-day deadline jurisdictional. *See id.*

It is undisputed that Peterson did not receive any salary payments after February 27, 2009, but continued working for JMJ until October 2. Peterson filed his wage claim on November 18, 2009 seeking all of his unpaid salary. JMJ argues the TWC had no jurisdiction to award Peterson wages owed before May 16, because these wages were due to be paid more than 180 days before Peterson filed his claim. The TWC responds that Peterson agreed to defer his compensation and Barton told him that he would be paid in full on September 25. Because Peterson filed his wage claim within 180 days of the date JMJ failed to pay him his deferred compensation, the TWC argues it had jurisdiction to award Peterson the full amount that was unpaid.

JMJ contends the TWC had no authority to resolve what is, essentially, a contract dispute. The company suggests that basing the award on JMJ's alleged promised to pay Peterson the full amount owed on September 25 goes outside the TWC's statutory mandate. According to JMJ, the TWC's fact-finding authority regarding when wages become due is limited to a determination of the employee's wage schedule. We disagree.

When a wage claim becomes due is a question of fact to be determined by the TWC. *See Lunsford*, 906 S.W.2d at 542. Chapter 61 specifically allows an employee to schedule payment

of wages on a date other than a regularly scheduled payday. *See* TEX. LAB. CODE ANN. § 61.013 (West. 2006). JMJ does not point to any provision in Chapter 61 limiting the TWC's ability to determine that the date wages became due was changed to a date other than a regularly scheduled payday. To hold otherwise would allow an employer to avoid an administrative wage claim merely by persuading an employee to agree to a payment date more than 180 days after the wages were scheduled to be paid. We conclude, therefore, that the TWC had the authority to determine that the all of Peterson's unpaid salary was due to be paid on September 25, placing the entire amount within its jurisdiction to award. *See Lunsford*, 906 S.W.2d at 542–43.

### III. Substantial Evidence of Date Wages Due

JMJ next contends the TWC presented no competent summary judgment evidence to show the TWC's finding that all wages were due on September 25 was supported by substantial evidence. Most of JMJ's argument addresses the admissibility of Peterson's affidavit testimony. In addition to the affidavit testimony, however, the TWC submitted a certified copy of the oral testimony presented at the TWC hearing. This testimony alone provides more than a scintilla of evidence to support the finding that all the wages owed to Peterson were due on September 25.

Although the de novo standard of review prohibits the trial court from simply reviewing the agency's record to determine if the agency's decision is supported by substantial evidence, individual items from the agency's record may be introduced independently before the trial court as part of its de novo review. *See Nuernberg v. Tex. Emp't Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993). Here, the TWC submitted a certified copy of the oral testimony presented at the TWC hearing as part of its summary judgment evidence and JMJ made no objection. The testimony included the following exchange:

> Hearing Officer: Was there some sort of an agreement to defer the payment of wages period?

Barton: Well, uh, we explained to Mr. Peterson that we did not have the funds to make those payments . . . and we told him that would [sic] work on making payment in the future and that date came and went and we were still unable to do it.

Hearing Officer: Was that date September 25?

Barton: I believe so, yes.

On appeal, JMJ contends this evidence is not competent because it is hearsay. Evidence is not incompetent, however, merely because it is hearsay. *See Gaspar v. Lawnpro*, 372 S.W.3d 754, 756 (Tex. App.—Dallas 2012, no pet.). Hearsay is a defect in form that must be raised in the trial court and the offering party must be given an opportunity to amend. *Id.* at 756–57. Absent an objection and ruling from the trial court, any error in admission of the evidence on the basis that it is hearsay is waived. *Id.*

As stated above, JMJ made no objection to the hearing testimony as summary judgment evidence, so its hearsay complaint has not been preserved. Furthermore, the statements offered by the TWC were made by a representative of JMJ. A party's own statement is not hearsay if it is offered against the party who made it. TEX. R. EVID. 801(e)(2)(A), (B), (D); *see Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). We conclude, therefore, that the hearing testimony was properly considered by the trial court.

JMJ next argues that, because it submitted evidence to show there was no agreement to pay Peterson all his past due wages on September 25, the TWC's evidence did no more than raise a fact issue and was insufficient to support summary judgment. In making this argument, JMJ misunderstands the standard of review correctly applied by the trial court. To obtain summary judgment, the TWC was required to show only that its decision was supported by substantial evidence. *See Lunsford*, 906 S.W.2d at 542. Whether the decision was supported by substantial evidence is a question of law. *Id.* at 541. The evidence may be conflicting or disputed and still constitute substantial evidence. *See Brinkmeyer*, 662 S.W.2d at 956.

Barton's testimony by itself constituted more than a scintilla of evidence to show that JMJ told Peterson he would be paid all of his past due wages on September 25. Accordingly, the trial court did not err in concluding there was substantial evidence to support the TWC's finding that all of Peterson's unpaid wages became due on September 25. We resolve JMJ's first two issues against it.

### III. Substantial Evidence of Amount of Wages Owed

In its third issue, JMJ contends the trial court erred in affirming the amount of wages awarded to Peterson because the $66,000 amount calculated by the TWC was incorrect. JMJ argues that, even if it owed Peterson the full amount of his unpaid wages, the evidence showed that the total amount owed was no more than $58,333.38. JMJ bases its calculation on the assumption that it owed wages for the period of March 1 through September 30, 2009 with two pay checks of $4,166.67 per month (14 x $4166.67 = $58,333.38). But the evidence submitted by JMJ shows that the last paycheck Peterson received was for the pay period ending on February 6, 2009. In addition, JMJ's internal correspondence showed that Peterson's last day with the company for purposes of payroll was October 9, 2009. Adding in the time periods of February 6 to March 1 and September 30 to October 9, Peterson was entitled to sixteen pay checks, bringing the total to $66,666.72. Based on this evidence, we conclude the trial court did not err in holding there was substantial evidence to support the amount awarded by the TWC as a matter of law. We resolve JMJ's third issue against it.

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

120263F.P05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JMJ ACQUISITIONS MANAGEMENT, LLC, Appellant

No. 05-12-00263-CV        V.

TERRY L. PETERSON AND TEXAS WORKFORCE COMMISSION, Appellees

On Appeal from the 95th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-02746-D.
Opinion delivered by Justice Evans.
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of June, 2013.

/David Evans/

DAVID EVANS
JUSTICE