# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00183-CV

**Appellant, Raymond Bloch// Cross-Appellants, SAVR Communications, Inc.;
and OnAsset Intelligence, Inc.**

**v.**

**Appellees, SAVR Communications, Inc.; OnAsset Intelligence, Inc.; VanOwen Group
Acquisition Company, Inc.; Adam Crossno; and John Crossno//
Cross-Appellee, Raymond Bloch**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-10-004519, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

These appeals arise from a dispute over recovery of benefits provided under a written employment agreement in the event of an employee's termination. There are two principal issues we must decide: (1) whether the Texas Workforce Commission (TWC) acted contrary to the Texas Payday Act in concluding that the disputed benefits were not "severance pay" that the employee could recover through an administrative "wage claim" under the Act; and (2) whether the employee's recovery of the disputed benefits through his wage claim gives rise to res judicata barring his claim for attorney's fees incident to a common-law breach-of-contract theory of recovery. We answer both questions in the affirmative.

**BACKGROUND**

Although the underlying dispute is more complicated, the procedural posture of this appeal has narrowed considerably the facts and events that are material to our analysis.[1] In February 2008, Raymond (Ray) Bloch executed a written "Employment Agreement" with SAVR Communications, Inc., under which he was to work as a "Product Design Engineer" for a five-year "initial term," subject to earlier termination by various specified actions or events. In December 2008, substantially all of SAVR's assets were sold to a related entity, OnAsset Intelligence, Inc., and it is undisputed for present purposes that Bloch thereafter became an employee of OnAsset, in addition to SAVR. But, following the sale, Bloch was asked to execute a new written employment agreement with OnAsset, and he refused, professing concerns with non-compete language not found in the earlier agreement. While the parties dispute the precise sequence of events that ensued and their legal significance, they agree that Bloch's refusal to sign the new agreement led to the termination of his employment (whether with SAVR, OnAsset, or both) in January 2009.

In the event SAVR terminated his employment without "cause," the Employment Agreement entitled Bloch to a payment equaling the amount of his annual salary if the termination occurred during the first four years of the initial term, and a pro rata share of his annual salary based on the months remaining in the initial term if the termination occurred during the fifth and final year. Invoking his rights under this provision and claiming he had been terminated without cause, Bloch demanded that SAVR, OnAsset, or the companies' owners pay him $95,000, which both sides agree was the amount of Bloch's annual salary at the time of termination. After his demand was rejected,

---

[1] *See* Tex. R. App. P. 47.1, 47.4.

Bloch unsuccessfully sought recovery of the disputed payment from the two companies through a Payday Act "wage claim" before the Texas Workforce Commission.[2]

As they relate to this appeal, the proceedings before the TWC centered chiefly on whether the contractual payment right Bloch had invoked qualified as "wages" he could recover under the Payday Act.[3] As we will further detail below when it becomes relevant to our analysis, the Payday Act's definition of "wages" (and, in turn, the types of payments that are recoverable through a wage claim) includes "compensation owed by an employer for . . . severance pay," provided such pay is "owed to an employee under a written agreement with the employer or under a written policy of the employer."[4] Accordingly, Bloch couched his wage claim in terms of seeking "severance pay" owed to him under a "written agreement with [his] employer," the Employment Agreement.[5] In denying him that recovery, the TWC commissioners (the final stage of the agency's

---

[2] *See generally* Tex. Lab. Code §§ 61.051-.067 (Payday Act provisions governing "wage claims"); *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 82 (Tex. 2008) (summarizing the "abbreviated mechanisms of an adversarial judicial process" TWC employs so as to "resolve [wage] claims expeditiously and inexpensively").

[3] Bloch's wage claim also sought recovery of about $1,800 in allegedly unused vacation pay. He succeeded in obtaining a final TWC order awarding him nearly all of that amount from SAVR, and this aspect of the parties' dispute is no longer at issue.

[4] *See* Tex. Lab. Code § 61.001(7).

[5] At various junctures below, Bloch also suggested that the disputed $95,000 payment might independently qualify as "wages" under other portions of the Payday Act's definition, attributing the "severance pay" characterization to pigeonholing by the TWC staff who were ostensibly assisting him in completing (pro se at the time) the paperwork required to initiate his wage claim. But Bloch has not preserved these contentions on appeal, nor would we otherwise need to address them, so we express no opinion as to whether the payment might be "wages" under the Payday Act for reasons other than being "severance pay."

3

adjudicatory processes[6]) relied on a rule, since repealed, and detailed below, that had construed and defined "severance pay" under the Payday Act in terms of the method by which severance pay is calculated. Applying that rule, the commissioners reasoned that Bloch "is not entitled to any severance pay, as the payment under the written agreement with SAVR Communications, Inc. [i.e., the Employment Agreement] was attributable to a future time period, rather than being severance pay intended to compensate him for his past service."

Upon exhausting these administrative remedies, the Payday Act authorizes a party to a wage-claim proceeding to seek judicial review of the TWC's final order "by trial de novo with the substantial evidence rule being the standard of review."[7] Bloch timely perfected a claim for judicial review of the TWC's order through the underlying suit.[8] However, predicated on the same underlying factual allegations, Bloch also asserted a common-law breach-of-contract cause of action

---

[6] *See* Tex. Lab. Code §§ 61.0611-.14. Two of the TWC's three commissioners joined in the order. The Hon. Tom Pauken, then the commissioner representing employers, dissented without comment, so it is unclear whether he disagreed with the majority's ruling on severance pay, vacation pay, or both.

[7] *Id*. § 61.062.

[8] Suits for judicial review under the Payday Act must be filed in the claimant's county of residence (which for Bloch is Travis County) and not later than the thirtieth day after the date the final TWC order is mailed. *See id*. § 61.062(b), (d). Further, TWC and "any other party to the proceeding before the commission must be made defendants in the suit." *See id*. § 61.062(c). There is no dispute that, through the underlying suit, Bloch asserted a claim for judicial review complying with these procedural requirements.

Bloch also moved unsuccessfully for rehearing before TWC before filing his suit, although this action was not required to preserve his right to seek judicial review. *See id*. §§ 61.0614(2), .062(a).

4

seeking recovery of the disputed $95,000 as damages,[9] plus attorney's fees to which he claimed entitlement under both the Employment Agreement[10] and chapter 38 of the Civil Practice and Remedies Code.[11] The defendants (cross-appellants here) specially excepted to Bloch's breach-of-contract cause of action, urging that under the Texas Supreme Court's decision in *Igal v. Brightstar Information Technology Group, Inc.*,[12] the cause of action was barred by res judicata by virtue of the TWC's final administrative order.[13] The district court sustained the special exception and dismissed Bloch's contract claims with prejudice.[14]

---

[9] Bloch asserted his contract claims against not only SAVR and OnAsset, the two private parties who were proper defendants to his judicial-review claim, but also against the companies' owners and an entity known as VanOwen Group Acquisition Company, Inc. Because the distinctions between the defendants to Bloch's judicial-claim versus his contract claims do not ultimately impact our analysis, we will simply use the terms "defendants" or "cross-appellants" for convenience when referring to either or both groups of defendants.

[10] The Employment Agreement provides, in relevant part:

Each party may recover by appropriate action the amount of the actual damage caused to such party by any failure, refusal or neglect of the other party to perform his or its agreements herein contained, together with any and all costs incurred by such party, including reasonable attorney's fees in seeking such relief. The remedies provided in this Agreement shall be deemed cumulative and the exercise of one shall not preclude the exercise of any other remedy at law or in equity for the same event or any other event.

[11] *See* Tex. Civ. Prac. & Rem. Code § 38.001(1).

[12] 250 S.W.3d 78 (Tex. 2008).

[13] *See id.* at 86-89.

[14] Although the Hon. Gisela Triana would ultimately sign the district court's final judgment, and hence our reference to her in the caption above, the Hon. Rhonda Hurley signed the interlocutory order granting the special exception and dismissing Bloch's contract claims.

This left pending only Bloch's judicial-review claim challenging the TWC's final order, and the two sides filed competing summary-judgment motions on the issue of whether that order was supported by substantial evidence. Bloch's motion also urged the district court to revisit the prior interlocutory ruling dismissing his contract claims and to award him relief under that theory. Following a hearing, the district court denied Bloch's summary-judgment motion "to the extent [Bloch] requests that the Court reconsider the prior ruling sustaining Defendants' Special Exceptions and dismissing [Bloch's] breach of contract cause of action." However, as to the parties' competing motions or grounds regarding Bloch's judicial-review claim, the court granted Bloch's motion and denied cross-appellants' motion, holding specifically that TWC "erred in determining that the sum claimed was not severance pay" recoverable under the Payday Act.

The district court's ruling further reflects (although the facts appear nowhere else in our record) that "[a]t the summary-judgment hearing the parties agreed and stipulated that should [Bloch's] motion be granted . . . on his [judicial-review] claim under Chapter 61 of the Texas Labor Code," "the appropriate remedy" was for the court to proceed to render judgment awarding Bloch the "unpaid wages" at issue "rather than remanding [Bloch's] claim for any additional fact-findings or contested case hearing" as it ordinarily would have done at that juncture.[15] Accordingly, the

---

[15] There is no jurisdictional impediment to this agreed remedy because the TWC's jurisdiction to award unpaid wages is concurrent with that of the district court rather than exclusive. *See Igal*, 250 S.W.3d at 87-88 (explaining that Payday Act wage-claim remedies are cumulative of the common-law remedies for recovering the withheld wages); *cf. Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 29-41 (Tex. App.—Austin 2013, no pet.) (op. on reh'g) (example of case where trial court lacked subject-matter jurisdiction to award monetary relief after reversing administrative order because agency had exclusive jurisdiction over underlying dispute).

district court rendered final judgment awarding Bloch $95,000 in "unpaid wages" from "defendants [SAVR] and [OnAsset] under the Texas Payday Law."[16]

Bloch perfected an appeal challenging the portion of the judgment dismissing and refusing to reconsider his claim for attorney's fees, and the defendants jointly perfected a cross-appeal challenging the district court's summary-judgment rulings on Bloch's wage claim. TWC did not perfect an appeal to defend its now-reversed administrative order, nor has it filed briefing or otherwise advocated a position in this cause.

## ANALYSIS

**Wage claim**

In their appeal, cross-appellants bring a single issue contending the district court erred in granting summary judgment for Bloch and denying their competing motion because there was substantial evidence that, as TWC had determined, the disputed $95,000 payment was not "severance pay" recoverable under the Payday Act.

### *Standard of review*

We review these summary-judgment rulings de novo.[17] Summary judgment is proper if the movant establishes that there is no genuine issue of material fact and that it is entitled to

---

[16] The judgment also noted that the TWC's decision regarding vacation pay "was not challenged as part of this action for judicial review, and . . . remains in effect."

[17] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

judgment as a matter of law.[18]   When, as here, both parties move for summary judgment on overlapping grounds and the district court grants one motion and denies the other, we review any summary-judgment evidence presented by either side, determine all questions presented, and render the judgment that the trial court should have rendered.[19]

The overlapping summary-judgment grounds in this case concerned a common issue that is itself a question of law—namely, whether the TWC's order denying Bloch recovery of the $95,000 payment as "severance pay" under the Payday Act was supported by "substantial evidence."[20]  In essence, "substantial evidence" is a rational-basis test that inquires whether an agency decision has reasonable factual support.[21]  Although this standard is often highly favorable to the proponents of administrative orders, especially in regard to factual determinations[22] (a

---

[18]   *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

[19]   *See Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

[20]   *See Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998); *JMJ Acquisitions Mgmt., LLC v. Peterson*, 407 S.W.3d 371, 373-74 (Tex. App.—Dallas 2013, no pet.).

[21]   *See Collingsworth Gen. Hosp*, 988 S.W.2d at 708; *JMJ Acquisitions*, 407 S.W.3d at 373.

[22]   The agency's decision is presumed valid, and the party challenging the decision bears the burden of establishing that it is not supported by substantial evidence. *See Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986).  Substantial evidence must be more than a scintilla, but the evidence in the record may actually preponderate against the decision and, nonetheless, amount to substantial evidence supporting the decision. *See JMJ Acquisitions*, 407 S.W.3d at 374.  Where, as here, the substantial-evidence analysis operates in the context of trial de novo—the so-called "substantial-evidence-de-novo" method of review—the inquiry centers on whether evidence presented to the trial court (as opposed to the agency) establishes that facts existed at the time of the TWC's order that reasonably supported its decision. *See Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Mercer*, 701 S.W.2d at 831.

proposition that cross-appellants repeatedly emphasize), the reasonableness of the TWC decision here, at least in the posture of this appeal, rests not on whether and what supporting facts exist, but on the legal import of undisputed facts. The factual predicate for the TWC's order is acknowledged by both sides—the Employment Agreement executed by Bloch and SAVR, whose full contents are in evidence and are conclusively established. The pivotal issue is whether TWC correctly construed and applied the Payday Act and any relevant rules to the Employment Agreement in concluding that the contractual entitlement on which Bloch relied would not be "severance pay" recoverable as "wages" under the Act. Even in the context of substantial-evidence review, as elsewhere, we review questions of statutory construction de novo.[23]

Our primary objective in statutory construction is to give effect to the Legislature's intent.[24] We seek that intent "first and foremost" in the statutory text.[25] "Where text is clear, text

---

In the context of summary-judgment procedure, these characteristics of substantial-evidence-de-novo review effectively shift the normal burdens. To obtain summary judgment affirming the agency order, a proponent need only present more than a scintilla of evidence of facts that would reasonably support the agency's decision, while a challenger must conclusively negate the existence of any such facts either to obtain or even resist summary judgment. *See JMJ Acquisitions*, 407 S.W.3d at 374-76; *Texas Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 266-67 (Tex. App.—Houston [1st Dist.] 2008, no pet). And, because both the propriety of summary judgment and the existence of substantial evidence are questions of law, we owe no deference to the district court's decision. *See Blanchard v. Brazos Forest Prods., L.P.*, 353 S.W.3d 569, 573-74 (Tex. App.—Fort Worth 2011, pet. denied); *Uranga v. Texas Workforce Comm'n*, 319 S.W.3d 787, 790 (Tex. App.—El Paso 2010, no pet.) (citing *Valence Operating Co.*, 164 S.W.3d at 661).

[23] *See Commission for Lawyer Discipline v. Schaefer*, 364 S.W.3d 831, 835 (Tex. 2012) (per curiam); *In re Humphreys*, 880 S.W.3d 402, 404 (Tex. 1994).

[24] *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[25] *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006).

is determinative of that intent."[26] We consider the words in context, not in isolation.[27] We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results.[28] In instances when a statute is ambiguous, courts may be required to defer to an authoritative construction of the statute by an agency charged with its enforcement that is reasonable and not inconsistent with the statutory text.[29] These principles of deference may be subject to further qualifications where the subject matter is not within any specialized expertise of the agency,[30] and where "a nontechnical question of law" is involved.[31]

To the extent the reasonableness of TWC's decision turns on construction of its rules, we would defer to the agency's construction unless it is plainly erroneous or inconsistent with

---

[26] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006); *Shumake*, 199 S.W.3d at 284).

[27] *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

[28] *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

[29] *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624-25 (Tex. 2011).

[30] *See id.* at 630.

[31] *See Rogers v. Texas Bd. of Architectural Exam'rs*, 390 S.W.3d 377, 384 (Tex. App.—Austin 2011, no pet.) (citing *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.)).

the text of the rule or underlying statute.[32] We construe administrative rules in the same manner as statutes because they have the force and effect of statutes.[33]

### Severance pay?

At all relevant times, the Payday Act has defined "wages" as:

[C]ompensation owed by an employer for:

(A)    labor or services rendered by an employee, whether computed on a time, task, piece, commission, or other basis; and

(B)    vacation pay, holiday pay, sick leave pay, parental leave pay, or *severance pay* owed to an employee under a written agreement with the employer or under a written policy of the employer.[34]

As previously indicated, Bloch's wage claim was predicated on the view that the payment obligation that would arise under the Employment Agreement in the event of his termination for cause would be "compensation owed by an employer [SAVR and/or OnAsset] for . . . severance pay owed to an employee [Bloch] under a written agreement with the employer." To date, the Legislature has not provided any further definition or elaboration regarding the meaning or scope of "severance pay" as used within this provision. However, the Legislature has delegated authority to the TWC to

---

[32] *See Public Util. Comm'n v. Gulf States Utils. Co*., 809 S.W.2d 201, 207 (Tex. 1991); *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Assoc.*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied).

[33] *Rodriguez v. Service Lloyds Ins. Co*., 997 S.W.2d 248, 254 (Tex. 1999).

[34] Tex. Lab. Code § 61.001(7) (emphasis added).

11

"adopt rules as necessary to implement this chapter,"[35] and pursuant to that delegation, in 1998, TWC promulgated "Texas Payday Rules" that were intended, in part, to "interpret[] and clarif[y]" various "statutory provisions," including the definition of "wages."[36] Of immediate relevance here, Commission Rule 821.25 (40 Tex. Admin. Code § 821.25), titled "Fringe Benefits," provided the following "clarification" of "severance pay" as it appears within the Payday Act's definition of "wages":

    (b)    Severance pay is payment by an employer to an employee beyond the employee's wages on termination of employment, usually based on the employee's length of prior service, and is not attributable to any period of time subsequent to termination.[37]

Thus, a key feature of this rule ("1998 Rule 821.25(b)" or "1998 Rule"), as both sides acknowledge, is that it serves to define "severance pay" in part based on a particular method of calculation—"usually based on length of service" (e.g., X amount of severance pay per year of service) and without reference to any "period of time subsequent to termination" (e.g., the length of time remaining in an employment contract's term).

Relying on these features of the 1998 Rule 821.25(b), cross-appellants urge that substantial evidence supports the TWC's decision, emphasizing that the Employment Agreement ties the amount of the disputed payment to "the length of time remaining on [the] initial term of the Employment Agreement after termination," so as to be "attributable to a time period subsequent to

---

[35] *Id*. § 61.002(a)(2).

[36] 23 Tex. Reg. 535, 535 (1998); 23 Tex. Reg. 5732, 5732.

[37] 23 Tex. Reg. 535, 538 (1998), *adopted* 23 Tex. Reg. 5732, 5733 (1998).

termination," and "does not provide, for example, that Bloch would receive a larger payment for more years of service" so as to be "based on length of service." In response, while insisting "in the extreme alternative" that the payment prescribed by the Employment Agreement actually complies with the 1998 Rule as a matter of law, Bloch argues chiefly that the 1998 Rule is invalid because it imposes restrictions and limitations on "severance pay" that are not supported by any reasonable construction of the Payday Act itself. In support of that proposition, Bloch emphasizes both the "common meaning" of "severance pay" as reflected in dictionary definitions[38] and TWC's own actions and reasoning regarding the meaning of that term.

As Bloch points out, effective September 20, 2010—about ten days before the TWC commissioners issued their final order on his wage claim—the agency amended Rule 821.25(b) to read as follows:

> (b) For purposes of §61.001(7)(B) of the Act, severance pay is payment by an employer to an employee beyond the employee's wages on termination of employment, based on the employee's prior service. Severance pay does not include payments for liquidated damages, payments in exchange for a release of claims, or payments made because of a lack of notice of separation.[39]

---

[38] *See* 15 Oxford English Dictionary 100 (2d ed. 1989) ("money paid in compensation to one whose contractual employment is terminated"); Black's Law Dictionary 1374 (6th ed.) ("Payment by an employer to an employee beyond his wages on termination of his employment. Such pay represents a form of compensation for the termination of the employment relation, for reasons other than the displaced employee's misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense the employee for certain losses attributable to the dismissal.").

[39] 35 Tex. Reg. 5511, 5514 (2010), *adopted* 35 Tex. Reg. 8506, 8508 (2010) (codified as an amendment to 40 Tex. Admin. Code § 821.25).

13

Thus, TWC changed the former version of Rule 821.25(b) in two material ways. First, TWC altered the preexisting language to emphasize that "*severance pay* owed to an employee under a written agreement with the employer or under a written policy of the employer," as used in the Payday Act, refers to a "payment . . . beyond the employee's wages on termination of employment" that is "based on the employee's prior service," as opposed to "*length of* prior service," and concurrently eliminated the exclusion of payments that could be said to be "attributable to any period of time subsequent to termination."[40] Second, TWC added a sentence emphasizing that "severance pay" does not include payments "for liquidated damages," those made "in exchange for a release of claims," or those "made because of a lack of notice of separation."

In its justification for the 2010 rule amendments, TWC explained:

> Section 821.25(b) removes references to length of prior service and to specify that neither amounts paid to an employee because of a lack of notice of termination nor payments made in accordance with post-employment agreements are considered severance pay.

> The Commission believes that current §821.25(b) is vague and difficult to interpret. The existing rule describes severance pay as "payment by an employer to an employee beyond the employee's wages on termination of employment, usually based on the employee's length of prior service, and is not attributable to any period of time subsequent to termination." Payments made pursuant to agreements made at separation, such as contractual liquidated damages claims or releases of liability claims must not be construed as severance pay under Texas Labor Code Chapter 61.

---

[40] The changes can also be illustrated as follows:

For purposes of §61.007(7)(B) of the Act, severance pay is payment by an employer to an employee beyond the employee's wages on termination of employment, ~~usually~~ based on the employee's ~~length of~~ prior service~~, and is not attributable to any period of time subsequent to termination~~.

> Also, amounts paid to an employee because of a lack of notice of separation must not be construed as severance pay.
>
> In addition, the current rule may overemphasize "length of service" as a prerequisite to severance pay. The key issue is that severance pay is based on the employee's prior service. In fact, written agreements o[r] employers' policies may vary regarding how length of service is treated. Rather than limiting employers' options, the Commission believes the definition of severance pay must be modified to focus only on prior service.[41]

In making these changes so as not to "overemphasize 'length of service' as a prerequisite to severance pay" or "limit[] employers' options" with regard to "how length of service is treated" in calculating it, TWC, as Bloch observes, necessarily concluded that "severance pay" under the Payday Act is broader than the range of "severance pay" that was recoverable under its 1998 Rule. The gist of TWC's 2010 rule, read in context with the underlying statutory definition, is that "severance pay" under the Payday Act is simply a form of additional compensation that the employer had previously agreed to pay the employee for his or her "prior service" in the event of termination, as opposed to some sort of post-termination arrangement whereby the employer makes payments to the employee—and is not tied to any particular method of calculation, as the former rule had required.

While Bloch does not dispute that the 1998 Rule 821.25(b) governs this case as a matter of rule construction, he urges that the TWC's reasoning in "abandoning" its prior focus on calculation methods in 2010 nonetheless demonstrates the absence of any reasonable statutory support for imposing those requirements and limitations on the parameters of "severance pay." Consequently, Bloch continues, the rule is invalid, as an agency's rules may not impose additional burdens, conditions, or restrictions in excess of, or inconsistent with, the relevant statutory

---

[41] 35 Tex. Reg. 8507 (2010); *see also* 35 Tex. Reg. 5512 (2010).

15

provisions.[42] The district court evidently was persuaded by this reasoning, and so are we. As Bloch suggests, the 1998 Rule conflates and confuses a particular *method of calculating* severance pay with the character of "severance pay" itself. By tying the definition of "severance pay" to a particular calculation method, the 1998 Rule, as TWC itself ultimately concluded, necessarily excluded a range of the "severance pay" obligations that the Legislature intended TWC to enforce and employees to recover under the Payday Act. Consequently, the 1998 Rule is invalid. We further note that while TWC's silence in this appeal is not dispositive or controlling, it is nonetheless telling that the agency has not attempted on appeal to justify its own order or urge that its now-former rule is entitled to any deference.

Cross-appellants have not suggested that the TWC's order could stand on any other legal theory other than that the disputed payment obligation under the Employment Agreement did not qualify as "severance pay" under the now-invalidated 1998 Rule. Accordingly, we conclude that the district court did not err in granting summary judgment for Bloch and denying cross-appellants' competing motion. We overrule cross-appellants' issue.

**Attorney's fee claim**

In his appeal, Bloch brings a single issue that is best understood in the context of the arguments he advanced before the district court in opposing dismissal of his contract claims. In response to the TWC's final order, Bloch reasoned that if the agency was correct that the disputed $95,000 payment obligation under the Employment Agreement was not "severance pay" he could

---

[42] *See, e.g., Texas Orthopaedic Ass'n v. Texas State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 719-22 (Tex. App.—Austin 2008, pet. denied); *Mid-Century Ins. Co. v. Texas Workers' Comp. Comm'n*, 187 S.W.3d 754, 757-61 (Tex. App.—Austin 2006, no pet.).

recover under the Payday Act, it meant that the agency had lacked subject-matter jurisdiction over his wage claim for that amount and that, furthermore, TWC's decision denying him recovery had been based on a perceived absence of jurisdiction rather than the merits. For either reason, Bloch maintained, res judicata would not bar his contract claim by virtue of the TWC's final decision because, as the Texas Supreme Court had recognized in *Igal*, res judicata presumes and requires a final decision on the merits by a tribunal that has subject-matter jurisdiction to render that decision.[43] But if, on the other hand, "the contract damages are found [by the court] to be covered by the Texas Payday Law"—i.e., that it turned out TWC had been wrong about its "jurisdiction"—Bloch prayed in the alternative for judicial review and reversal of the TWC's order. Now, having won on his judicial-review claim and obtained a final district court judgment awarding him the $95,000 payment as "wages" under the Payday Act—and understandably reluctant to risk "undoing" that relief—Bloch concedes that he has obtained a final judgment of a tribunal with jurisdiction over his wage claim, thereby giving rise to res judicata barring him from pursuing the same payment as damages through his breach-of-contract cause of action. Nevertheless, Bloch insists, this res judicata bar arising from the district court's judgment does not (or should not) extend to his claims for attorney's fees under his breach-of-contract cause of action. Accordingly, *with respect to these attorney's-fees claims only*, Bloch continues to maintain that the district court erred in dismissing his breach-of-contract cause of action based on res judicata purportedly arising from the TWC's final order (as opposed to the district court's final judgment). He adds that the district court repeated the

---

[43] *See Igal*, 250 S.W.3d at 82-86.

17

same error in refusing to reconsider that interlocutory dismissal when ruling on the summary-judgment motion.

Res judicata, also known as claim preclusion, bars the relitigation of a claim or cause of action that has been finally adjudicated, thereby preventing the splitting of a cause of action, and likewise bars claims or causes of action that are deemed to be ones that the claimant should have raised in the prior suit.[44] Texas follows the "transactional approach" to res judicata which, generally stated, looks to whether the subsequent claim or cause of action arises out of the same subject matter as the previous action and which, through the exercise of "diligence," could have been litigated in the prior suit.[45] A final judgment in an action will bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first action arose.[46] In *Igal*, the supreme court held that a TWC final order on a wage claim can have preclusive effect similar to a court's final judgment.[47] It followed, in the court's view, that where TWC had issued a final order denying an employee recovery on a wage claim, res judicata quite plainly barred the employee from seeking to recover the same unpaid wages through a common-law action.[48] Indeed, as the court observed, the two claims amounted merely to alternative procedural means for obtaining

---

[44] *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628-29, 631 (Tex. 1992).

[45] *See id.* at 631.

[46] *Id.* (citing Restatement (Second) of Judgments § 24(1) (1982)).

[47] *See Igal*, 250 S.W.3d at 86-87.

[48] *Id.* at 87-88.

18

the same remedy for the same injury, recovery of unpaid wages that the employer allegedly owed the employee.[49]

The gravamen of Bloch's argument here is that his claim for attorney's fees incident to his common-law breach-of-contract cause of action is distinguishable from his claim for damages under that cause of action for purposes of res judicata and *Igal*. The distinction fails because the attorney's-fee claim inescapably arises from the same subject matter as his wage claim, indeed, the same legal injury—the deprivation of "severance pay," which in turn is the alleged breach of the Employment Agreement on which all of Bloch's contract claims are predicated, including Bloch's claim for attorney's fees under both the Agreement and chapter 38.

Ultimately, Bloch's argument amounts to a plea that, as a matter of policy, employees who successfully recover unpaid wages under the Payday Act should be allowed to recover the attorney's fees they incur in that effort, especially where, as here, they have to resort to the courts, where the assistance of counsel is all but essential. He decries the prospect of employers "grind[ing] the plaintiff down or minimimiz[ing] the plaintiff's recovery by making him spend all he could ever hope to recover on his own fees and costs." Whatever merit Bloch's concerns might have as a matter of policy, it remains that the Payday Act has heretofore not included a fee-shifting mechanism within or alongside the "wages" for which it authorizes recovery, and whether it should provide one is the sole prerogative of the Legislature rather than us.[50] Accordingly, we overrule Bloch's issue.

---

[49] *Id*.

[50] *See, e.g.*, *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 705-06 (Tex. App.—Austin 2013, no pet.) (observing that, with regard to party's complaints about denial of attorney's-fee recovery under the Public Information Act for failure to satisfy the statute's prevailing-party requirement, "his remedy for these perceived injustices would lie in the Legislature rather than the Judicial Branch.").

**CONCLUSION**

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   March 19, 2014