

## NUMBER 13-20-00087-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

RGV CONCEPTS, LTD. AND
NEW CONCEPT, LLC,                                             Appellants,

v.

TEXAS WORKFORCE COMMISSION
AND ELOY CAVAZOS,                                             Appellees.

On appeal from the 206th District Court
of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Chief Justice Contreras**

In this appeal, appellants RGV Concepts, Ltd. and New Concept, LLC (collectively

RGV) argue the trial court erred by affirming an award of unpaid wages by appellee Texas

Workforce Commission (TWC) to appellee Eloy Cavazos. RGV contends by four issues, which we construe as two, that summary judgment in favor of appellees was improper. We reverse and remand.

## I. BACKGROUND

RGV is a commercial construction company. For several months beginning in September 2017, Cavazos worked for RGV as a "supervisor" on four Burger King remodeling projects in Laredo. Subsequently, Cavazos filed a wage claim with TWC under the Texas Payday Law, arguing RGV owed him additional regular and overtime pay pursuant to the federal Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 207(a)(1); TEX. LAB. CODE ANN. § 61.051(a). A TWC examiner made a preliminary determination denying Cavazos relief; however, an appeal tribunal of the TWC reversed that ruling in a decision issued on August 20, 2018. *See* TEX. LAB. CODE ANN. § 61.054. The TWC later issued a final order on January 15, 2019, finding: (1) Cavazos's regular rate of pay was $25 per hour; (2) his overtime rate of pay was $37.50 per hour; (3) he earned $29,787.50 in gross wages, including both regular and overtime hours worked; and (4) RGV paid him only $16,100. RGV was therefore ordered to pay Cavazos $13,687.50 in unpaid wages.

RGV filed suit against both appellees seeking judicial review of the TWC's order. *See id.* § 61.062. It argued that Cavazos was an independent contractor and that he agreed on a flat pay rate of $1,100 per week. Appellees answered the suit and filed a joint motion for summary judgment, arguing that more than a mere scintilla of evidence supported the TWC's findings that Cavazos was an "employee" of RGV and that he was therefore entitled to time-and-a-half overtime pay under the Texas Labor Code and the FLSA. Appellees' summary judgment evidence included an affidavit by Cavazos, stating

2

in relevant part as follows:

> 2. I was employed as a supervisor by [RGV] from September 4, 2017, to January 11, 2018. I was hired by Norberto De La Garza ("de la Garza") to work for RGV for 44 hours per week, 8 hours daily, Monday through Friday, and 4 hours on Saturdays at an hourly rate of $25 per hour. I was paid $1,100 weekly for fourteen weeks.
>
> 3. I worked on four different Burger King construction sites during this time. My general job duties including [sic] picking up and delivering materials to the job sites, make sure all job sites were open, making sure that necessary materials were on site, and making sure the work was started and finished as scheduled.
>
> 4. I poured concrete and assisted with leveling; hanging signs; removing grease traps; removing intercom and speakers; removing and installing tiles; getting permits from the city and fire marshal's office; painting windows; ordering containers for the construction trash; and coordinating with plumbers, stucco contractors, electricians, and air conditioning companies.
>
> 5. I received instructions from De La Garza about when, where, and how I was to perform my job. Since I was hired as a supervisor, I assisted De La Garza on the job.
>
> 6. I did not participate in hiring. I did not have the authority to discipline[,] to discharge workers[,] or [to] assign my tasks as a supervisor to other workers. All materials, tools, and supplies were purchased by RGV.
>
> 7. I did not employ any of my own workers to assist me in completing work for RGV. I did not participate in RGV's management. I did not have a written contract with RGV or Norberto de la Garza stating the terms and scope of the work I was to complete in exchange for a specific amount of pay.

The summary judgment evidence also included several invoices allegedly showing purchases made by Cavazos as part of his work for RGV.

RGV filed a response to the summary judgment motion, arguing in part that "there is a genuine issue as to whether Cavazos was a salaried worker or if he was hourly" and that, even if Cavazos was not salaried, he "failed to support his hours with substantial evidence" before the TWC. RGV later filed a supplemental response additionally arguing that Cavazos is not covered by the FLSA because he did not "engage[] in commerce or

3

in the production of goods for commerce" as defined in the statute. *See* 29 U.S.C. § 207(a)(1).[1]

The trial court granted the joint summary judgment motion and dismissed RGV's suit, thereby affirming the TWC's decision. The final judgment ordered that each party bear its own attorney's fees and costs. This appeal followed.

## II. Discussion

### A. Standard of Review

Chapter 61 of the Texas Labor Code governs administrative claims for unpaid wages before the TWC. If, after exhausting its administrative remedies, a party is unsatisfied with the TWC's decision, it may file suit for judicial review. Tex. Lab. Code Ann. § 61.062(a). The trial court then reviews the TWC's decision by trial de novo under the substantial evidence rule. *Id.* § 61.062(e); *see* Tex. Gov't Code Ann. § 2001.174 (describing substantial evidence review for agency decisions). A ruling is supported by substantial evidence when the evidence introduced before the trial court shows facts in existence at the time of the TWC's decision that "reasonably support" that decision. *Tex-Fin, Inc. v. Ducharne*, 492 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *JMJ Acquisitions Mgmt., LLC v. Peterson*, 407 S.W.3d 371, 373 (Tex. App.—Dallas 2013, no pet.); *see Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998).

Substantial evidence means more than a mere scintilla but need not amount to a preponderance. *Tex-Fin, Inc.*, 492 S.W.3d at 439; *JMJ Acquisitions*, 407 S.W.3d at 371; *Blanchard v. Brazos Forest Prods., L.P.*, 353 S.W.3d 569, 572 (Tex. App.—Fort Worth

---

[1] RGV did not file a motion for summary judgment.

2011, pet. denied); *see also Tex. Health Facilities Comm'n v. Charter Med.–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). Evidence is less than a scintilla is if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010).

Whether substantial evidence exists to support the TWC's decision is a question of law. *See Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006); *Blanchard*, 353 S.W.3d at 572. The trial court may not set aside the TWC's decision merely because it would have reached a different conclusion. *See Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986); *JMJ Acquisitions*, 407 S.W.3d at 374. Nor may the trial court set aside the decision because the testimony was conflicting or disputed or because it did not compel the result reached by the agency. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984); *JMJ Acquisitions*, 407 S.W.3d at 374. The TWC's decision carries a presumption of validity and may be set aside only if it was made without regard to the law or the facts and, therefore, was unreasonable, arbitrary, or capricious. *Tex-Fin, Inc.*, 492 S.W.3d at 439; *JMJ Acquisitions*, 407 S.W.3d at 371; *see Collingsworth*, 988 S.W.2d at 708; *see also* TEX. GOV'T CODE ANN. § 2001.174(2)(e).

When reviewing a summary judgment granted by the trial court in its de novo review of a TWC decision, we decide whether the evidence presented established, as a matter of law, that substantial evidence existed to support the TWC decision. *Blanchard*, 353 S.W.3d at 573; *JMJ Acquisitions*, 407 S.W.3d at 374; *see* TEX. R. CIV. P. 166a(c).

## B. Applicable Law

Under the FLSA, an employer must pay a covered employee who works in excess

5

of forty hours per week at least one-and-one-half times the employee's regular rate of pay for the overtime hours. 29 U.S.C. § 207(a)(1); *see* 40 TEX. ADMIN. CODE § 821.6(b) (stating that the TWC "shall look to the [FLSA]" and its accompanying regulations in determining an employee's entitlement to overtime pay). The statute covers any individual employee who "in any workweek is engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *Id.* § 203(b).

Section § 213(a)(1) of the FLSA provides that any employee employed in a "bona fide executive, administrative, or professional capacity" is exempt from the statute's provisions. *Id.* § 213(a)(1).

## C. Analysis

In its August 20, 2018 decision, the TWC appeal tribunal found, in relevant part, as follows:

> The evidence in the present matter demonstrates that the claimant is covered under the FLSA based on his individual services. As the claimant job duties included handling the employer's work materials, which were involved in interstate commerce. The claimant was responsible for picking up the materials from major retailers and delivering the materials to the employer's job sites. Although the claimant's job title was supervisor, the evidence demonstrates that he had no authority to govern, hire, or fire other workers. Thus, under the FLSA such non-management construction workers are covered and entitled to overtime pay under the Act. The employer provided no evidence to refute that the claimant is covered under the FLSA and not exempt. Given such, this Wage Claim Appeal Tribunal finds that the employer owes the claimant for all the hours he worked in excess of a regular forty-hour workweek during the weekly pay periods of September 4, 2017 through January 13, 2018.

RGV argues by two issues that substantial evidence does not support the TWC's conclusions that: (1) Cavazos was covered by the FLSA based on the type of work he

6

did; and (2) Cavazos is not exempt from the FLSA as a "bona fide executive employee."

As to its first issue, RGV contends that Cavazos was not covered by the FLSA because he was not "engaged in commerce or in the production of goods for commerce." *See id.* § 207(a)(1).[2] For an employee to be "engaged in commerce" under the FLSA, he must be "directly participating in the actual movement of persons or things in interstate commerce by . . . regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 493–98 (1943)); *see Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315–16 (11th Cir. 2011) ("An employee is subject to individual coverage only if he is *directly* and *regularly* engaged in interstate commerce."). Indirect or sporadic involvement in commerce is insufficient. *Josendis*, 662 F.3d at 1315–16; *Thorne*, 448 F.3d at 1266.

RGV argues that Cavazos "was engaged in purely local activity" that was not connected to interstate commerce. *See Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) ("Work that is purely local in nature does not meet the FLSA's requirements."); *Barr v. Custom Design & Installation, Inc.*, No. 3:13-CV-04925-M, 2015 WL 1255870, at *3

---

[2] The FLSA also covers any employee who "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). As relevant here, "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

(i)  has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii)  is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

*Id.* § 203(s)(1)(A). In an affidavit attached to its summary judgment response, RGV's representative Adriana De La Garza testified that RGV's annual gross sales did not equal or exceed $500,000. TWC concedes that FLSA enterprise coverage is not applicable here.

(N.D. Tex. Mar. 19, 2015) (mem. op. & order) ("[E]mployees have not engaged in commerce when they merely use interstate products to operate an intrastate business."). Alternatively, RGV argues that, even if some of Cavazos's duties could be considered as interstate commerce, there was no substantial evidence that he "directly and regularly" engaged in such activity.

In arguing that substantial evidence existed to support a finding that Cavazos was subject to individual coverage under the FLSA, TWC points to: (1) Cavazos's testimony that his duties for RGV included "picking up and delivering materials to the job sites" and "making sure that necessary materials were on site"; and (2) two invoices attached as summary judgment evidence purportedly demonstrating that some of the building materials he picked up were transported from outside of Texas. TWC posits that, when considered together, these exhibits constitute more than a scintilla of evidence to show that Cavazos regularly and directly engaged in interstate commerce. It argues that "a purchase and transportation of materials across state lines most certainly is 'commerce' under the FLSA, and an employee engaged in such transactions will be considered 'engaged in commerce' and individually covered by the FLSA." In support of this argument, RGV cites *Thorne*, 448 F.3d at 1266, as well as a regulation providing that,

> [a]lthough employees doing work in connection with mere isolated, sporadic, or occasional shipments in commerce of insubstantial amounts of goods will not be considered covered by virtue of that fact alone, the law is settled that every employee whose engagement in activities in commerce or in the production of goods for commerce, even though small in amount, is regular and recurring, is covered by the [FLSA].

29 C.F.R. § 776.3.[3]

---

[3] TWC also cites its own website, which states without reference to authority that "an individual whose work affects interstate commerce is covered as an individual" under the FLSA and that "'interstate commerce' is defined so broadly that practically anything fits, such as ordering, loading, or using supplies

We disagree that this evidence supports a finding that Cavazos engaged in interstate commerce. Cavazos stated in his affidavit that his "general job duties" included "picking up" construction materials to bring to RGV's job sites, but he did not identify where he picked up the materials from, nor did he state or imply that the materials he picked up were ever transported across state lines. And, contrary to TWC's representations, the invoices attached as summary judgment evidence do not show that Cavazos, as part of his duties with RGV, ever handled materials that had been transported from out-of-state. The invoices both show small purchases from a PPG Architectural Coatings store in Laredo. One of the invoices, for a $22.16 purchase, contains Cavazos's signature and indicates that RGV was the purchaser; the other invoice, for a $192.51 purchase, contains a "Shipping Contact" address in Kentucky but does not include the name of the purchaser or any signature. Even when combined with Cavazos's affidavit testimony, these invoices support no more than a "mere surmise or suspicion" that Cavazos himself "directly participat[ed] in the actual movement" of goods in interstate commerce. *See Thorne*, 448 F.3d at 1266; *Regal Fin. Co.*, 355 S.W.3d at 603.

TWC emphasizes that "any regular contact with commerce, no matter how small, will result in coverage." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007). And it notes that, in finding that individual FLSA coverage did not apply, the *Thorne* court observed that the appellant did not "produce evidence that he made

---

from out of state, accepting payments from customers based on credit cards issued by out-of-state banks, and so on." *FLSA Coverage*, TEX. WORKFORCE COMM'N, https://www.twc.texas.gov/news/efte/coverage_under_the_flsa.html (last visited Feb. 22, 2021). This statement is arguably misleading because it does not reflect the well-established law that an employee's engagement in interstate commerce must be "regular and recurrent" in order for individual coverage to apply. *See McLeod v. Threlkeld*, 319 U.S. 491, 493–98 (1943); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315–16 (11th Cir. 2011).

purchases of goods from out-of-state vendors." *Thorne*, 448 F.3d at 1267. But this does not mean that *any* evidence of *any* out-of-state purchases will suffice to establish individual FLSA coverage. Instead, the case law firmly establishes that such purchases must be "regular and recurring" if they are to support coverage. *See id.* at 1266; *see also McLeod*, 319 U.S. at 493–98; *Josendis*, 662 F.3d at 1315–16.

Here, the invoices in evidence show purchases from a store in Laredo, not from an out-of-state vendor. *See Thorne*, 448 F.3d at 1267 ("[T]he fact that some of the tools [appellant] purchased may have crossed state lines at a previous time does not in itself implicate interstate commerce. When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the [FLSA]."). Even if the invoices somehow showed that Cavazos purchased materials from outside Texas, they did not show that such engagement was "regular" so as to support individual coverage under the FLSA. Instead, at most, they showed indirect and sporadic involvement. This is not enough to establish coverage. *See Josendis*, 662 F.3d at 1315–16; *Thorne*, 448 F.3d at 1266.

There was not more than a scintilla of evidence that Cavazos "directly and regularly" engaged in interstate commerce while working for RGV. Therefore, the TWC's decision was contrary to law, and under the substantial evidence rule, the trial court should have denied the joint motion for summary judgment. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(D); *Tex-Fin, Inc.*, 492 S.W.3d at 439. RGV's first issue is sustained. In light of this conclusion, we do not address RGV's second issue, arguing that Cavazos was exempt from the FLSA as a "bona fide executive" employee. *See* TEX. R. APP. P. 47.1.

10

### III. Conclusion

We reverse the trial court's summary judgment. The cause is remanded with instructions to deny appellees' motion for summary judgment and for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
25th day of February, 2021.

11