**Reversed in Part, Affirmed in Part, and Remanded and Opinion filed April 26, 2016.**



In the

# Fourteenth Court of Appeals

### NO. 14-15-00267-CV

### TEX-FIN, INC., AND TEXAS WORKFORCE COMMISSION, Appellants

### V.

### GUSTAVO E. DUCHARNE, Appellee

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2010-64089**

## O P I N I O N

The Texas Workforce Commission (TWC) dismissed Gustavo E. Ducharne's wage claim filed against his former employer, Tex-Fin, Inc., under the Texas Payday Act. Ducharne sought review of this decision in district court. All of the parties filed motions for summary judgment regarding whether the TWC's decision was supported by substantial evidence. The trial court granted Ducharne's motion for summary judgment in part and remanded the case to the TWC for further proceedings to determine the amount of wages due to Ducharne. On appeal, both Tex-Fin and the TWC argue that the trial court erred when it granted Ducharne's motion because,

under a proper substantial evidence review, the TWC's decision was supported by substantial evidence. Tex-Fin contends the trial court erred by not ordering a general remand, and the TWC argues the court erred by remanding at all. We reverse the portion of the trial court's judgment remanding the case to the TWC for further proceedings to determine the amount of wages due to Ducharne, affirm the remainder of the judgment, and remand for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Tex-Fin is a Houston-based company that manufactures and sells finned pipe and tubes for the heat transfer industry. Ducharne began working for Tex-Fin in 2004 on a salary basis as a sales representative for Latin America. On June 11, 2008, Ducharne signed a written agreement with Tex-Fin, effective January 2008. Sales manager Sean Hall signed the agreement on behalf of Tex-Fin.

The agreement provided Ducharne with a "salary package," including, among other items: salary in the amount of $75,400.00; a "Fin Tube Sales Bonus" based on .5% of total Latin American and international sales in which Ducharne participated; and an "Air Cooler, Shell & Tube, & Air Cooler Replacement Tube Bundles Sales Bonus" based on .5% of total Latin American and international sales in which Ducharne participated. The agreement provided that Ducharne was "responsible for" "Total Fin-Tube sales" of "$4 million @ 20% Margin." The agreement also stated: "Total sales for Air Coolers, Shell & Tube, & Air Cooler Replacement Tube Bundles $6 million @ 20% Margin." The agreement provided "examples" of the calculation of each sales bonus:

> Example Fin Tube Sales: $4 million x .5% = $20,000.00 based on 20% margins.
>
> . . .
>
> Example Air Cooler, Shell & Tube, & Replacement Bundles Sales: $6 million x .5% = $30,000.00 based on 20% margins.

2

Tex-Fin paid Ducharne a sales bonus in December 2008.

On April 22, 2009, Tex-Fin terminated Ducharne essentially for insubordination. According to Ducharne, at the time of his termination, he had generated over $4.5 million in eligible sales for fiscal year 2009. On May 4, 2009, Ducharne sent Sean an email requesting payment for commissions accrued between October 2008 and April 2009, including relating to pending orders, and for severance. That same day, Trey Hall, IT Manager for Tex-Fin, responded because Sean was in the hospital. In his response, Trey stated: "Commissions are calculated and paid in December and commissions are only paid on collected invoices. Commissions are not paid on outstanding invoices or pending orders and commissions will not be paid early." Trey also stated that Tex-Fin did not owe Ducharne any severance pay.

In August 2009, Ducharne filed a Texas Payday Act claim against Tex-Fin with the TWC, for unpaid commissions and unpaid severance. The TWC's assigned investigator initially determined that Ducharne was not entitled to unpaid bonuses or unpaid severance pay and dismissed his wage claim. Ducharne appealed this decision to the TWC's appeal tribunal, which held a telephonic hearing. Sean and Ducharne participated in the hearing. The tribunal affirmed the dismissal of Ducharne's wage claim.

In making its ruling, the tribunal cited sections 61.001(7)[1] and 61.015 of the

---

[1] Section 61.001(7) provides:

"Wages" means compensation owed by an employer for:

    (A) labor or services rendered by an employee, whether computed on a time, task, piece, commission, or other basis; and

    (B) vacation pay, holiday pay, sick leave pay, parental leave pay, or severance pay owed to an employee under a written agreement with the employer or under a written policy of the employer.

Tex. Lab. Code Ann. § 61.001(7) (West 2015).

Payday Act, and TWC rule 821.26. The tribunal issued these relevant conclusions:

- Ducharne is not entitled to any unpaid wages from Tex-Fin under the Texas Payday Law.
- "Although [Ducharne] seeks payment of commissions, . . . [Tex-Fin] truly had an agreement with [Ducharne] for payment of bonus pay for his sales."
- "The evidence established that the bonus program was an annual program, calculated on sales made in the fiscal year and paid in December."
- "[T]here is no evidence that [Tex-Fin] ever intended to pay the bonus based on a partial year of work or to pay the bonus before the due date in December."
- "The evidence indicates that [Ducharne] is not entitled to bonus or commission pay."
- "The monies claimed are not due under the Texas Payday Law and the Texas Payday Rules."

Ducharne appealed this decision to the TWC, which affirmed the dismissal of his wage claim in a 2-to-1 decision.

Ducharne timely filed a petition in district court against Tex-Fin and the TWC for judicial review of that portion of the TWC's decision dismissing his claim for unpaid bonuses. *See* Tex. Lab. Code § 61.062 (West 2015).[2] All parties filed

---

[2] Section 61.062, Judicial Review, provides:

(a) A party who has exhausted the party's administrative remedies under this chapter, other than a motion for rehearing, may bring a suit to appeal the order.

(b) The suit must be filed not later than the 30th day after the date the final order is mailed.

(c) The commission and any other party to the proceeding before the commission must be made defendants in the suit.

(d) The suit must be brought in the county of the claimant's residence. If the claimant is not a resident of this state, the suit must be brought in the county in this state in which the employer has its principal place of business.

4

motions for traditional summary judgment. The trial court granted in part Ducharne's motion for summary judgment and denied Tex-Fin's and the TWC's motions for summary judgment, reversing and setting aside the decision of the TWC. The trial court ordered the case remanded to the TWC for a determination of the amount of wages due to Ducharne. Tex-Fin and the TWC filed motions for new trial, which the trial court denied.

Tex-Fin and the TWC now appeal. They argue the same first issue—that the trial court failed to review the TWC's decision by trial de novo with the substantial evidence rule being the standard of review and erred in granting Ducharne summary judgment. As its second issue, Tex-Fin asserts that the trial court erred by instructing the TWC on remand to determine an amount of wages owed to Ducharne instead of remanding the entire case. As its second issue, the TWC contends the trial court erred in remanding to the TWC because it is the trial court that should determine the amount of wages due.

## II. ANALYSIS

### A. Jurisdiction

As a threshold matter, we consider whether we have jurisdiction over this appeal from the trial court's "final summary judgment." "[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2000).

[W]hen there has not been a conventional trial on the merits, an order or

---

(e) An appeal under this subchapter is by trial de novo with the substantial evidence rule being the standard of review in the manner as applied to an appeal from a final decision under Subtitle A, Title 4.

Tex. Lab. Code Ann. § 61.062. Subtitle A, title 4, is the Texas Unemployment Compensation Act. *See id.* § 201.001 (West 2015).

5

judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties . . . . An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final", or because the word "final" appears elsewhere in the order, or even because it awards costs . . . . Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case.

To determine whether an order disposes of all pending claims and parties, it may . . . be necessary for the appellate court to look to the record in the case . . . . [I]f the record reveals the existence of parties or claims not mentioned in the order, the order is not final.

*Id.* at 205-06. Whether a judicial decree is a final judgment must be determined from its language and the record in the case. *Id.* at 195; *Philips v. McNease*, 467 S.W.3d 688, 693 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

First, the language in the trial court's judgment supports that it is final. The order in question is entitled "FINAL SUMMARY JUDGMENT." "While a particular title is not dispositive nor is particular language required, it is an indication of the intent of the trial court in issuing the Order." *Futch v. Reliant Sources, Inc.*, 351 S.W.3d 929, 932–33 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (title "FINAL SUMMARY JUDGMENT" is language that indicates finality). The order goes on to deny Tex-Fin's motion for summary judgment, deny the TWC's motion for summary judgment, and grant "in part" Ducharne's cross-motion for summary judgment. However, directly following the "in part" language, there is a handwritten superscript asterisk, which indicates and corresponds with a typed rider on a second page. The record indicates this second page was stapled to first page of the court's order. The rider states that the TWC's decision denying and dismissing Ducharne's wage claim is reversed and set aside. It then recites: "Therefore, the Court ORDERS

6

that the case be REMANDED to the [TWC] for further proceedings to determine the amount [sic] wages due to Plaintiff Gustavo Ducharne in light of the Court's ruling. This is the final judgment; it disposes of all claims and parties, and is appealable." This last sentence essentially tracks the type of "clear and unequivocal" finality language that the Supreme Court of Texas approved in *Lehmann*. *See* 39 S.W.3d at 206 ("A statement like, 'This judgment finally disposes of all parties and all claims and is appealable', would leave no doubt about the court's intention."); *see also In re Daredia*, 317 S.W.3d 247, 248–49 (Tex. 2010) (per curiam) (concluding language— "All relief not expressly granted herein is denied. This judgment disposes of all parties and all claims in this cause of action and is therefore FINAL."—was "clear enough" to indicate finality under *Lehmann* despite not stating judgment was "appealable").

The record also supports that the judgment is final. In his cross-motion for summary judgment, Ducharne presented the following ground: the TWC did not apply the correct legal standard to the undisputed facts and therefore the TWC's decision to dismiss his wage claim as to bonuses was not supported by substantial evidence. He further asserted: "Because Ducharne met the requirements of the written Contract (which did not require he work the entire year), Ducharne is entitled to commissions earned while employed" in the amount of $22,922.96, based on almost $4.6 million in sales. Both Tex-Fin and the TWC argued in their summary judgment motions that the TWC's decision to dismiss Ducharne's wage claim was supported by substantial evidence. After a summary judgment hearing,[3] Tex-Fin and Ducharne each submitted additional briefing. Tex-Fin argued that the trial court either could affirm the TWC's decision *or* reverse and remand the entire case. Ducharne argued that the trial court either could reverse and render (Ducharne's

---

[3] The record contains no reporter's record.

preference) *or* reverse and remand. In its judgment, the trial court reversed and set aside the TWC's decision. The trial court further ruled that the TWC, on remand, and not the trial court, should conduct further proceedings to determine the amount of wages due to Ducharne. Both Tex-Fin and the TWC filed motions for new trial with regard to the trial court's authority upon reversal. Tex-Fin maintained its position that the court *only* could remand the entire case. The TWC argued that the trial court could reverse and render an award of wages *but not* remand. The record confirms that the determination of the amount of Ducharne's unpaid wages was placed squarely before the court, which refused to decide the issue.

Regardless of whether its adjudication by remand was erroneous or lacked an adequate legal basis, the trial court's judgment unambiguously expresses its "intent to finally dispose" of the issue of Ducharne's wage determination and is not interlocutory. *See Lehmann*, 39 S.W.3d at 200, 204, 206 ("erroneous, but final" judgment is appealable); *Philips*, 467 S.W.3d at 693 ("If the judgment does not dispose of every pending claim but is 'clearly and unequivocally' final on its face, the judgment is not interlocutory merely because the record does not afford a legal basis for the adjudication. [*Lehmann*, 39 S.W.3d] at 206. Rather, the judgment is final but erroneous, and it must be reversed. *Id.*"); *S. Mgmt. Servs., Inc. v. SM Energy Co.*, 398 S.W.3d 350, 358 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If the order does not dispose of every pending claim but is 'clearly and unequivocally' final on its face, the order is not interlocutory merely because the record does not afford a legal basis for the adjudication. [*Lehmann*, 39 S.W.3d] at 206. Rather, the order is final but erroneous. 'In those circumstances, the order must be appealed and reversed.' *Id.*"). The language of the trial court's judgment does not, in any way, reserve the issue of the amount of Ducharne's wages due for later determination. *See In re Guardianship of Miller*, 299 S.W.3d 179, 185 (Tex. App.—Dallas 2009, no pet.)

8

(probate order was final and appealable where it refused to appoint guardian and did not reserve issue of guardianship for later determination).

Therefore, we conclude that the judgment is final and appealable, and proceed to the merits of Tex-Fin's and the TWC's issues.

## B.  Texas Payday Law

Ducharne filed his wage claim with the TWC pursuant to the Texas Payday Act.  *See* Tex. Lab. Code Ann. §§ 61.001–.095 (West 2015 & Supp. 2015).  The Payday Act provides for administrative review of claims and then for judicial review of final administrative decisions.  *See id.* § 61.062(a); *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 82 (Tex. 2008).  Under section 61.015, Payment of Commissions and Bonuses:

> (a) Wages paid on commission and bonuses are due according to the terms of:
>> (1) an agreement between the employee and employer; or
>> (2) an applicable collective bargaining agreement.
>
> (b) An employer shall pay wages paid on commission and bonuses to an employee in a timely manner as required for the payment of other wages under this chapter.

Tex. Lab. Code Ann. § 61.015.  Under section 821.26 of the Texas Payday Rules,[4] Commissions or Bonuses:

> (a) For purposes of § 61.015 of the Act:
>> (1) Commissions or bonuses are earned when the employee has met all the required conditions set forth in the applicable agreement with the employer.  To change an agreement, there

---

[4] The purpose of the Texas Payday Rules is "to implement and interpret the provisions of" the Payday Act.  40 Tex. Admin. Code § 821.1(b) (2015) (Tex. Workforce Comm'n, Title and Purpose).

must be prior notice as to the nature and effective date of the changes. Changes to written agreements shall be in writing.

(2) Commissions or bonuses are due to be paid, in a timely manner, according to the terms specified in an agreement between an employer and an employee. The terms should specify the time intervals or circumstances (or combinations thereof) that would cause commissions or bonuses to become payable, such as, but not limited to, weekly, monthly, quarterly, when sales transactions are recorded, upon buyer's remittance, etc.

(b) Unless otherwise agreed, the employer shall pay, after separation, commissions or bonuses earned as of the time of separation.

(c) Commissions or bonuses due after separation from employment are payable based on the routine or practice specified in the agreement when the employee was employed, or on any special agreement made between the employee and the employer upon separation.

(d) Draws against commissions or bonuses may be recovered from the current or any subsequent pay period until fully reconciled.

40 Tex. Admin. Code § 821.26 (2015) (Tex. Workforce Comm'n, Commissions or Bonuses).

## C. Substantial evidence, de novo standard of review

The trial court reviews the TWC's decision on wage claims by trial de novo to determine whether there is substantial evidence to support the TWC's ruling. Tex. Lab. Code Ann. § 61.062; *see id.* § 212.202(a) (West 2015) (same standard of judicial review utilized under Texas Unemployment Compensation Act) ("Judicial review under this subchapter is by trial de novo based on the substantial evidence rule."); *McCrory v. Henderson*, 431 S.W.3d 140, 142 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The TWC's action is presumed valid, and the party seeking to set aside the decision has the burden of showing that less than substantial evidence supports the decision. *McCrory*, 431 S.W.3d at 142. Whether there is substantial evidence to support an administrative decision is a question of law. *Id.* Substantial

evidence is more than a mere scintilla but need not be a preponderance. *Id.* at 142–43. "Evidence may actually preponderate against the decision of an agency and still amount to substantial evidence." *Id.* at 143.

"[T]he issue is whether the evidence introduced before the trial court shows facts in existence at the time of the [TWC's] decision that reasonably support the decision." *Id.* (quoting *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998)); *Tex. Workforce Comm'n v. City of Houston*, No. 14-07-00407-CV, 2009 WL 396208, at *3 (Tex. App.—Houston [14th Dist.] Feb. 19, 2009, no pet.) (mem. op.) ("The trial court bases its decision on the evidence admitted at the trial de novo, not the evidence presented at the commission hearing."). On controverted issues of fact, we may not substitute our judgment for that of the TWC. *McCrory*, 431 S.W.3d at 143. The TWC's decision may be set aside only if it was made without regard to the law or the facts and, as a result, was unreasonable, arbitrary, or capricious. *Id.*; *see Collingsworth Gen. Hosp.*, 988 S.W.2d at 708.

Trial courts may grant summary judgments in cases tried under the substantial evidence rule, and appeals under substantial evidence review are uniquely suited to summary judgment because the only issue before the court is a question of law. *Blanchard v. Brazos Forest Prods., L.P.*, 353 S.W.3d 569, 573 (Tex. App.—Fort Worth 2011, pet. denied) (citing *Arellano v. Tex. Emp't Comm'n*, 810 S.W.2d 767, 771 (Tex. App.—San Antonio 1991, writ denied)). "There is no restriction on summary judgment in a case tried under the substantial evidence rule." *JMJ Acquisitions Mgmt., LLC v. Peterson*, 407 S.W.3d 371, 374 (Tex. App.—Dallas 2013, no pet.).

In a summary judgment case, the issue on appeal is whether the movant met his burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein &*

11

*Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Mann Frankfort*, 289 S.W.3d at 848. We review the evidence presented in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* When the parties file competing motions for summary judgment, we determine all questions presented and render the judgment that the trial court should have rendered, if appropriate. *See Bloch v. SAVR Commc'ns, Inc.*, No. 03-12-00183-CV, 2014 WL 1203197, at *3 (Tex. App.—Austin Mar. 19, 2014, pet. denied) (mem. op.) (citing *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004)).

By granting summary judgment to Ducharne, the trial court necessarily held that there was not substantial evidence to support the TWC's decision. We review the TWC's decision against the evidence presented to the trial court and the governing law to determine whether the summary judgment evidence established as a matter of law that substantial evidence did not exist to support the TWC's decision. *See McCrory*, 431 S.W.3d at 143; *Tex. Workers' Compensation Ins. Fund v. Tex. Emp't Comm'n*, 941 S.W.2d 331, 333–34 (Tex. App.—Corpus Christi 1997, no writ); *see also Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 295 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (review includes whether TWC applied correct legal standard).

## D. The June 2008 agreement

In the trial court below, Ducharne argued one ground for summary judgment—the TWC did not apply the correct law from the Payday Law and the interpretation of contracts to the undisputed facts and, therefore, the TWC's decision was not reasonably supported by substantial evidence. On appeal, Tex-Fin and the TWC

12

argue that the trial court failed to conduct its judicial review of the TWC's decision to dismiss Ducharne's wage claim by trial de novo with substantial evidence as the standard of review and that the TWC's decision was supported by substantial evidence.

We focus our review on the written agreement between Tex-Fin and Ducharne, which was submitted to the district court in support of the motions for summary judgment. Because under the Payday Act, wages on bonuses and commissions are due according to the "terms of [] an agreement between the employee and the employer," *see* Tex. Labor Code Ann. § 61.015(a), and here it is undisputed that there was a written compensation agreement in place between Tex-Fin and Ducharne, we apply Texas law regarding contract interpretation.

When interpreting a contract, our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). By this approach, we "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The parties' intent is governed by what is written in the contract, not by what one side contends they intended but failed to say. *Id.* at 127. "[I]t is objective, not subjective, intent that controls." *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam). We therefore give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We examine the writing as a whole to harmonize and give effect to all of the contract's provisions so that none is rendered meaningless or surplusage. *J.M. Davidson*, 128 S.W.3d at 229; *Coker v. Coker*, 650 S.W.2d 391,

13

393–94 (Tex. 1983). We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l. Bank v. L & F. Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

If a contract is not ambiguous, courts must enforce it as written without considering parol evidence for the purpose of creating an ambiguity or giving the contract "a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam). The contract is unambiguous if it can be given a certain or definite meaning as a matter of law. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012) (citing *Italian Cowboy Partners*, 341 S.W.3d at 333). A contract is not ambiguous simply because the parties advance conflicting interpretations.[5] *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). If the contract is subject to more than one reasonable interpretation after applying the pertinent rules of contract construction, then the contract is ambiguous and there is a fact issue regarding the parties' intent. *El Paso Field Servs.*, 389 S.W.3d at 806 (citing *J.M. Davidson*, 128 S.W.3d at 229).

## 1. No requirement that Ducharne work for a full year

Here, the agreement comprises a proposal regarding Ducharne's "salary package"—extended by Tex-Fin and accepted by Ducharne. The agreement, effective January 2008, states that Tex-Fin wants to "continue building [its] partnership together" and "look[s] forward to working with [Ducharne] in the future growth of Tex-Fin." The contract plainly states: "Fin Tube Sales Bonus will be based on .5% of total Latin American. [sic] .5% of International sales that [Ducharne]

---

[5] None of the parties argues that the contract at issue is ambiguous.

14

participate[s] in." The agreement also plainly states: "Air Cooler, Shell & Tube, & Air Cooler Replacement Tube Bundles Sales Bonus will be based on .5% of total Latin American Sales. [sic] .5% of International Sales [Ducharne] participate[s] in." The contract therefore requires that Ducharne "participate in" sales of certain categories of products and that those sales be "Latin American" or "International" in nature as conditions to receive a "sales bonus."

The agreement provides: "Total Fin-Tube sales responsible for $4 million @ 20% Margins." "Responsible" means "having an obligation to do something . . . as part of one's job." New Oxford American Dictionary 1488 (3d ed. 2010). That is, Ducharne was obligated to accomplish $4 million in total Fin Tube sales at a 20% margin for Tex-Fin. The agreement also states: "Total sales for Air Coolers, Shell & Tube, & Air Cooler Replacement Tube Bundles $6 million @ 20% margins." Considering this provision with reference to the whole instrument, the reasonable import is that Ducharne also was "responsible for" $6 million in total sales of Air Cooler, Shell & Tube, & Air Cooler Replacement Tube Bundles at a 20% margin. Otherwise, this provision would be rendered meaningless. *See Coker*, 650 S.W.2d at 394. Therefore, the contract provides another required condition, the minimum amount of the sales required to earn a "sales bonus" on either covered category of products—$4 million for total Fin Tubes, and $6 million for total Air Coolers, Shell & Tube, & Air Cooler Replacement Tube Bundles. Further, Ducharne was to accomplish such sales at 20% margins.

We do not, however, find within the contract any language conditioning Ducharne's earning any sales bonus on his remaining employed for an entire year, whether fiscal or calendar, of work. *See* 40 Tex. Admin. Code § 821.26(a)(1) ("Commissions or bonuses are earned when the employee has met all the required conditions set forth in the applicable agreement with the employer."). Nor does the

15

contract provide that Ducharne would not earn any sales bonus if he was no longer employed or was terminated by Tex-Fin. *See id.* The agreement also does not mention or make reference to any other agreements or conditions between the parties. Instead, the intent of the parties, as expressed in the plain language of the agreement, was that Ducharne earn a sales bonus where the sales at issue met the requisite conditions pertaining to: (1) type of product, (2) margin percentage, (3) non-domestic nature, (4) total minimum amount, and (5) his participation. If Tex-Fin had intended a full year of work to be a required condition for Ducharne to earn a bonus, then "it would have been simple to say so." *See Gilbert Tex. Constr.*, 327 S.W.3d at 127. There is also no evidence of any written change to the agreement. *See* Tex. Admin. Code § 821.26(a)(1).

The TWC argues that the letter agreement "only addressed annual issues, such as compensation, vacation, sick leave, and expense accounts," and that "the amounts of the examples stated in the agreement were consistent with annual sales." We do not find this argument persuasive—again, because the plain language in the agreement does not condition earning a sales bonus on any annual employment requirement. Moreover, the "examples" in the agreement simply used the minimum required sales amounts to illustrate how the bonus calculation would work, and say nothing to condition any bonus on such sales having to take place over the course of a complete year.

## 2. Beyond the written agreement

Aside from the contract, Tex-Fin and the TWC rely on Sean's testimony in his affidavit that there was no company policy and no separate agreement with Ducharne to pay a bonus based on a partial year or upon the termination of an employee.[6] Sean

---

[6] Tex-Fin and the TWC attached certain excerpts from Tex-Fin's Employee Handbook to

also stated that Tex-Fin's policy and practice was bonuses are determined annually, based on sales from the fiscal year, and are paid in December. Ducharne points to the May 4, 2009 email from Trey, which stated that commissions are calculated and paid in December; only paid on collected invoices, not outstanding invoices or pending orders; and will not be paid early.

If a contract is unambiguous, the parol evidence rule generally precludes consideration of evidence of prior or contemporaneous agreements. *Haden*, 266 S.W.3d at 451. Prior or contemporaneous agreements that conflict with the contract at issue are inadmissible and without effect. *Id.*; *Hua Xu v. Lam*, No. 14-13-00730-CV, 2014 WL 5795475, at *11 (Tex. App.—Houston [14th Dist.] Nov. 6, 2014, no pet.) (mem. op.) ("Such evidence cannot be considered by the court when it construes the contract, even if the evidence is admitted without objection."); *see Boondoggles Corp. v. Yancey*, No. 01-05-00185-CV, 2006 WL 2192708, at *5 (Tex. App.—Houston [1st Dist.] Aug. 3, 2006, no pet.) (mem. op.) (concluding that "intent" testimony allegedly conditioning employee's bonus on business improving did not alter and conflicted with terms of written contract, which stated benefits included monthly bonus of 3% of net sales); *see also Tex. Workers' Compensation Ins. Fund*, 941 S.W.2d at 334 (in severance context, concluding oral condition that employee sign release agreement before receiving severance "obstructs the operation of an otherwise clearly understandable written agreement" only conditioning employee's severance on her return of company equipment and documents). To the extent the TWC relied on parol evidence to conclude there was no evidence that Tex-Fin intended to pay Ducharne a bonus based on a partial year of work, the TWC improperly considered such evidence because the written contract only imposed the

---

their motions for summary judgment. However, nothing within these excerpts addresses employee bonuses or any practice or policy connected with them.

previously discussed conditions on Ducharne's receiving any bonus.

Even viewing the summary judgment evidence in the light most favorable to, and indulging every reasonable inference in favor of, Tex-Fin and the TWC, and keeping in mind the court may not substitute its judgment for that of the TWC, we conclude the TWC incorrectly applied the law because the written agreement does not condition Ducharne's ability to earn a sales bonus on his working for a full year. *Cf. Burkard v. ASCO Co.*, 779 S.W.2d 805, 806 (Tex. 1989) (per curiam) (noting that "[i]n granting Burkard the right to a bonus, the contract did not condition that right on Burkard's continued employment for an entire year").[7]

However, extrinsic evidence may be admissible to "clarify, explain, or give meaning to terms of a contract that are facially incomplete." *See Boondoggles Corp.*, 2006 WL 2192708, at *10. Therefore, to the extent parol evidence demonstrates a prior or contemporaneous agreement collateral to and consistent with—that does not vary or contradict—the contract, it can be considered. *Haden*, 266 S.W.3d at 451 (describing collateral and consistent exception to parol evidence rule); *Hua Xu*, 2014 WL 5795475, at *11 (same).

Here, such parol evidence supplies some missing terms regarding "the time intervals or circumstances (or combinations thereof) that would cause commissions or bonuses to become payable, such as, but not limited to, weekly, monthly, quarterly,

---

[7] In *Burkard*, the employment contract at issue contained a provision entitling the employee to a bonus if she generated a certain level of revenues during the contract term. 779 S.W.2d at 806. The contract did not address whether a bonus would be paid if the employee's employment terminated before the contract term ended. *Id.* The jury awarded a bonus, the trial court signed its judgment based on the jury's verdict, but the appellate court ruled as a matter of law that the employee could not collect a bonus payment after resigning nine months into the contract term. *Id.* While we acknowledge that *Burkard* did not arise in the context of judicial review of an administrative decision, and did not involve trial de novo, substantial evidence review, the Texas Supreme Court considered the conditions expressed in the contract and reversed the appellate court's legal ruling. *See id.*

18

when sales transactions are recorded, upon buyer's remittance, etc." *See* 40 Tex. Admin. Code § 821.26(a)(2). Such parol evidence also provides certain routine and practical details regarding how Tex-Fin was to pay any bonus due to Ducharne after separation. *See id.* § 821.26(b), (c). Sean testified that there was a policy that bonuses for sales for the prior fiscal year are determined annually and paid in December and, in accordance with that policy, Ducharne received a bonus in December 2008. In his email, Trey stated that commissions are calculated and paid in December, only paid on collected invoices, and will not be paid early. Ducharne acknowledged that he was paid a bonus "pursuant to the Contract in 2008." Moreover, this arrangement—that sales bonuses are determined and calculated annually, based on sales during the prior fiscal year, paid on collected invoices, and paid in December—does not vary or contradict the written agreement.

Therefore, viewing the summary judgment evidence in the light most favorable to, and indulging every reasonable inference in favor of, Tex-Fin and the TWC, and keeping in mind the court may not substitute its judgment for that of the TWC, there was substantial evidence to support that "the bonus program was an annual program, calculated on sales made in the fiscal year and paid in December" and that Tex-Fin did not intend "to pay the bonus before the due date in December."

Because the TWC made its overall decision and dismissed Ducharne's wage claim as to unpaid bonuses based on a misapplication of the law—Tex-Fin's lack of intent to pay Ducharne a bonus based on a partial year of work—we conclude that the trial court properly conducted its review by trial de novo based on substantial evidence and was correct in setting aside the TWC's decision because it was not supported by substantial evidence.

We overrule Tex-Fin's first issue and the TWC's first issue.

## E. The trial court's remand to the TWC

To a certain extent, all the parties take issue with the trial court's remand here. In its second issue, Tex-Fin argues that the trial court only could issue a general remand and should not have instructed the TWC to determine an amount of wages owed to Ducharne. In contrast, the TWC contends that the trial court erred by remanding to the TWC at all because "the only alternative available was to determine an award of wages." Finally, according to Ducharne, because the trial court reversed the TWC's decision, and he proved up the actual amount owed, the trial court should have rendered judgment rather than remanded.

Here, instead of filing a common-law action, Ducharne chose to pursue his Payday Act wage claim in TWC proceedings, pursuant to TWC rules and procedures. *See Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 194 (Tex. App.—Fort Worth 1995, writ denied); *see also Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 508 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("The Payday Act is not an employee's sole and exclusive remedy for a claim based on past wages, but is, rather, an alternative remedy that is cumulative of remedies under the common law."). After the assigned investigator issued his dismissal, Ducharne appealed this initial order to a TWC appeals tribunal and, after exhausting his administrative remedies, appealed the TWC's final order to the trial court. *See* Tex. Lab. Code Ann. §§ 61.052 (governing preliminary wage determination order), 61.054 (party can request hearing before appeal tribunal to appeal preliminary order), 61.059 (tribunal may modify, affirm, or rescind preliminary order), 61.060 (after hearing, tribunal issues written order for payment due or penalty assessed), 61.0612 (governing TWC review of tribunal order), 61.062(a) (authorizing bringing a suit to appeal final TWC order). There is no dispute that section 61.062 governs judicial review of Ducharne's claim here. Nor is there any dispute that the substantial evidence, de novo standard

of review applies.

According to Tex-Fin and Ducharne, section 2001.174 of the Texas Government Code applies and authorizes remand here. Tex-Fin takes the position that the only remand authorized by section 2001.174 is a general remand. Ducharne argues that section 2001.174 authorizes reversal and rendering judgment (his preference) or reversal and remanding the case for further proceedings. The TWC contends that section 2001.174 is inapplicable to judicial review of a Payday Act claim. According to the TWC, the trial court's decision to reverse and remand violates the substantial evidence, de novo rule of review as provided in section 61.062 because it "could lead to all issues being re-litigated and would violate the intent of the legislature."[8]

Section 2001.174, Review Under Substantial Evidence Rule or Undefined Scope of Review, provides:

> If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment

---

[8] The TWC also argues that section 61.063(c) provides authority for the trial court to hold a hearing, review evidence, and reach a decision as to the amount of wages owed. *See* Tex. Lab. Code Ann. § 61.063(c) (West 2015) ("If after judicial review it is determined that some or all of the wages are not owed or the penalty is reduced or is not assessed, the commission shall remit the appropriate amount to the party assessed the wage payment or penalty, plus the interest accrued on the escrowed amount. Interest under this section shall be paid for the period beginning on the date the assessed amount is paid to the commission and ending on the date the amount is remitted to the party."). Section 61.063—"Payment to Commission; Escrow Pending Review; Waiver"—apparently governs in situations where the final TWC order requires a party to pay wages or a penalty, not where the final order dismisses the wage claim. *See id.* § 61.063(a) (West 2015) ("Not later than the 30th day after the date a commission order becomes final, the party required to pay wages or a penalty shall . . . ."); *see also* 40 Tex. Admin. Code § 821.62 (2015) (Tex. Workforce Comm'n, Collection Pending Judicial Review) ("The Commission may initiate or continue collection on a final order unless a party complies with the payment provision of § 61.063 of the Act."). However, the statute does acknowledge that judicial review of such final order may result in a determination altering the wages or penalty or removing them entirely. *See* Tex. Lab. Code Ann. § 61.063(c).

of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> (A) in violation of a constitutional or statutory provision;

> (B) in excess of the agency's statutory authority;

> (C) made through unlawful procedure;

> (D) affected by other error of law;

> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174 (West 2008).

Section 2001.174 falls within subchapter G, Contested Case: Judicial Review, chapter 2001, subtitle A, title 10, of the Government Code. Chapter 2001 is known as the Administrative Procedure Act. *Id.* § 2001.002 (West 2008). One purpose of the Administrative Procedure Act is to "restate the law of judicial review of state agency action." *Id.* § 2001.001(3) (West 2008). However, the statutory schemes of both the Payday Act and the Texas Unemployment Compensation Act otherwise expressly provide for judicial review by trial de novo with the substantial evidence rule being the standard of review. *See* Tex. Lab. Code Ann. §§ 61.062, 212.201–.210. Section 61.062(e) explicitly ties judicial review under the Payday Act with judicial review "in the manner as applied to an appeal from a final decision under" the Unemployment Compensation Act. *See id.* § 61.062(e). No provision within either Act provides for remand to the TWC for further proceedings.

Further, hearings conducted pursuant to subchapter D, Wage Claims, of title 2

22

or under title 4 of the Labor Code, including those under the Unemployment Compensation Act, are expressly "not subject" to section 2001.174. *See* Tex. Lab. Code §§ 61.058 ("(a) A hearing conducted under this subchapter is subject to the rules and hearings procedures used by the commission in the determination of a claim for unemployment compensation benefits. (b) The hearing is not subject to Chapter 2001, Government Code."), 301.0615(a)(2) (West 2015) ("Except as otherwise provided by [Title 4], a hearing conducted under this title is not subject to . . . Subchapters C-H, Chapter 2001, Government Code."). *Contra, e.g.*, Tex. Water Code Ann. § 36.253 (West 2008) (expressly incorporating section 2001.174 as governing review on appeal).

Consistent with these distinct statutory schemes, we have not located any case involving an appeal from a final TWC or Texas Employment Commission (TEC)[9] order in the context of a wage or unemployment compensation benefits claim that applies section 2001.174. Moreover, we find *Texas Employment Commission v. Torvik*, 797 S.W.2d 195 (Tex. App.—Corpus Christi 1990, no writ), instructive. In *Torvik*, in the context of judicial review of an unemployment compensation benefits case under the predecessor statute to the Unemployment Compensation Act, which also provided for trial de novo with substantial evidence review,[10] the court of appeals concluded that "[t]here is no provision in this rule for the court to remand the case to the T.E.C. and the court has no authority to do so." *Id. at* 196. The *Torvik* court found cases applying section 19 of the Administrative Procedures and Texas

---

[9] The TEC dealt with section 61 wage claims, like Ducharne's, until 1995. In 1995, the Legislature enacted House Bill 1863, merging 28 workforce services, including the TEC, into the TWC. Act of May 26, 1995, 74th Leg., R.S., ch. 655, art. 11, 1995 Tex. Gen. Laws 3543, 3580 (current version at Tex. Lab. Code Ann. §§ 301.001–.171).

[10] *See Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986) ("Appellate review of a TEC decision is provided for under Tex. Rev. Civ. Stat. Ann. art. 5221B–4(i) (Vernon 1971), which requires a trial de novo with substantial evidence review.").

Register Act,[11] which contained language that substantively tracks section 2001.174, inapplicable.[12] *Id.* The court noted that TEC hearings regarding unemployment compensation claims were specifically exempt from section 19.[13] *Id.* The *Torvik* court therefore concluded that the trial court's order remanding the case and granting a new administrative hearing was without effect. *Id.*

Accordingly, we conclude that section 2001.174 does not apply here. We further conclude that the trial court has authority under section 61.062 to reverse and set aside the TWC's decision and render judgment, but does not have the authority to remand to the TWC for further proceedings.[14] We hold that the trial court erred by remanding the claim here for a determination of the amount of wages due to Ducharne.

Therefore, we overrule Tex-Fin's second issue, but sustain the TWC's second issue.

---

[11] *See, e.g., R.R. Comm'n of Tex. v. Home Transp. Co., Inc.*, 654 S.W.2d 432, 434 (Tex. 1983) ("Section 19(e) of [the Administrative Procedures and Texas Register Act] empowers the district court to 'reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced' by the Commission's errors.").

[12] We similarly discount the cases applying section 2001.174 on which Tex-Fin and Ducharne rely.

[13] *See Mercer*, 701 S.W.2d at 831 ("TEC is specifically excluded from the Administrative Procedure and Texas Register Act, Tex. Rev. Civ. Stat. Ann. art. 6252–13a § 21(g) (Vernon Supp. 1985).").

[14] Texas appellate courts have reversed TWC and TEC denials of unemployment compensation benefits and rendered judgment. *See, e.g., Kellum v. Tex. Workforce Comm'n*, 188 S.W.3d 411, 415 (Tex. App.—Dallas 2006, no pet.) (reversing trial court's decision on summary judgment to affirm TWC's denial of benefits and rendering judgment); *Lohmuller v. Workforce Comm'n*, No. 14-00-00008-CV, 2000 WL 1862824, at *3 (Tex. App.—Houston [14th Dist.] Dec. 21, 2000, no pet.) (same); *Levelland Indep. Sch. Dist. v. Contreras*, 865 S.W.2d 474, 478 (Tex. App.—Amarillo 1993, writ denied) (affirming trial court's decision on summary judgment to reverse TEC's denial of benefits and render judgment).

## F. Amount of Ducharne's unpaid wages

In his brief, Ducharne argues that "[t]he summary judgment record before the trial court, upon which the trial court was asked to and was statutorily empowered to decide, demonstrated the bonus/commissions in the amount of $22,922.96 to be undisputed." He therefore requests that this court render judgment in his favor in such amount.

In any summary judgment appeal, the issues reviewed by this court must have been actually presented to and considered by the trial court. *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992); *Wright v. Gundersen*, 956 S.W.2d 43, 46 (Tex. App.—Houston [14th Dist.] 1996, no writ). Here, assuming without deciding that Ducharne's motion presented a summary judgment ground that as a matter of law he met all the conditions set out in his sales contract to earn a sales bonus of $22,922.96, the trial court expressly did not consider this issue, but rather (erroneously) remanded it to the TWC.

Moreover, under rule 25.1 of the Texas Rules of Appellate Procedure, any "party who seeks to alter the trial court's judgment . . . must file a notice of appeal." Tex. R. App. P. 25.1(c). "[A]n appellee who has not filed a notice of appeal may not seek to alter the trial court's judgment to award the appellee more relief than the trial court granted the appellee. *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 666 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (subs. op.) (citing *Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002)). By asking us to render judgment on a ground the trial court instead remanded to the TWC, Ducharne seeks to alter, and requests greater relief than that awarded in, the judgment. However, Ducharne did not file a notice of appeal from the judgment. Nor did Ducharne notice a cross-appeal.

We overrule Ducharne's request.[15]

### III.   CONCLUSION

Accordingly, we reverse the portion of the trial court's final summary judgment remanding the case to the TWC for further proceedings to determine the amount of wages due to Ducharne.  We affirm the remainder of the judgment and remand for further proceedings in accordance with this opinion.


/s/    Marc W. Brown
Justice



Panel consists of Justices Jamison, Donovan, and Brown.

---

[15] We express no opinion as to whether Ducharne will be successful in establishing his entitlement to any bonus in the trial court on remand.