In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00409-CV**
_____

**ICP, LLC, Appellant**

**V.**

**ALBERT C. BUSSE AND TEXAS WORKFORCE COMMISSION,**
**Appellees**

**On Appeal from the County Court at Law No. 2**
**Montgomery County, Texas**
**Trial Cause No. 15-10-11214-CV**

**MEMORANDUM OPINION**

In a single issue, appellant ICP, LLC ("ICP") appeals the trial court's judgment finding that substantial evidence exists to support the Texas Workforce Commission's ("the TWC") administrative decision requiring ICP to pay contractual severance benefits to Albert C. Busse. We affirm the trial court's judgment.

1

BACKGROUND

Busse worked for ICP from April 2011 until April 2014, when ICP terminated his employment. Busse was not given severance pay, and he brought a wage claim to the TWC asserting that ICP owed him severance pay. The record shows that ICP and Busse had a written employment offer which provided that if ICP terminated the employment relationship in any fashion, ICP would pay a severance of the amount of the original base salary for up to six months or until Busse found other employment. The employment offer stated that Busse's original base salary was $8500 per month. The employment offer also included a handwritten notation under the severance pay provision stating three months first year and six months second year. Busse claimed that since he worked for ICP for more than two years, he was entitled to six months' salary at $8500 per month, totaling $51,000. In a preliminary wage determination order, the TWC found that ICP owed Busse $51,000 in unpaid severance pay and that ICP violated the Texas Payday Law when it failed to pay Busse's earned wages.

ICP appealed the TWC's preliminary wage determination order to the Wage Claim Appeal Tribunal ("the Tribunal"), arguing that the employment offer was terminated because Busse failed to perform the duties as set forth in the offer. ICP argued that it did not owe Busse any severance pay because the employment offer

became null and void when Busse failed to comply with its terms. ICP further argued that according to the terms of the employment offer, it had overpaid Busse $82,985.35 over a period of two and a half years.

The Tribunal noted that ICP provided Busse with an offer which stated in part:

Employment with ICP is at-will and either party can terminate the relationship at any time with or without cause and with or without notice. Should the company terminate the relationship in any fashion; the company will pay a severance of the amount of the original base salary for up to 6 months or until A. Craig Busse finds other employment. (in hand writing: ["]3 months 1st yr. 6 months 2nd year, [initials acb])"

The Tribunal concluded that

[a]lthough the offer letter provided by the employer contains a paragraph referencing severance pay, because the payment referenced by the agreement is not tied to the employee's length of service, and because this paragraph also refers to the payment being made whether or not notice is given, and because the document contemplates the payments only being made until the employee has obtained other employment, I conclude that the payments referenced in the agreement should be viewed as compensation for lack of adequate notice rather than as compensation of severance pay.

The Tribunal reversed and dismissed Busse's wage claim and concluded that ICP owed Busse no wages.

Busse appealed the decision of the Tribunal to the TWC's Commission Appeals, which concluded that the signed employment agreement is a valid severance agreement, the amount of severance in the agreement was based on

Busse's length of service with ICP, and Busse was entitled to six months' severance pay at a rate of $8500 per month, totaling $51,000. ICP sought judicial review of the TWC's final administrative decision, arguing that the TWC's decision is not supported by substantial evidence, and ICP also sought a declaratory judgment that section 61.063(b) of the Texas Labor Code is unconstitutional. The trial court conducted a trial on the merits, during which the TWC's administrative record upon which it based its decision was admitted into evidence.

During the trial, Busse, who is a certified lubrication specialist and oil monitoring analyst, testified that he had an employment agreement with ICP to work as the manager of sales and marketing, and he worked for ICP for three years. According to Busse, his job consisted of increasing sales of finished lubricants, managing lubricants accounts, increasing sales of packaging of finished lubricants and other related products. Busse testified that he performed some of those functions, including sales, the entire time he worked at ICP, but not on a consistent basis. Busse explained that ICP paid him a base salary of $8500 per month, his base salary never decreased to $7000 per month, and he never received any commission payments. Busse testified that he had only acquired a handful of new customers during his time at ICP because ICP did not have a product to market. Busse also explained that he

rarely went on business lunches so he never submitted any expense receipts for the lunches.

Busse testified that Oscar Botello, the owner of ICP, made the handwritten notes on the employment agreement because the original agreement provided base salary up to six months, and Botello wanted to add three months after the first year and six months after the second year. Busse testified that he believed that Botello made the handwritten additions before the parties signed the agreement. Busse explained that when Botello told him that he was being laid off, Botello gave him a month's notice so he could continue to work and look for other employment, and Botello also paid him for his accrued vacation time. According to Busse, the severance provision in the employment agreement is tied to his length of service and not to his amount of sales, the quality of the work he performed, or the reason for his separation with the company. Busse testified that Botello told him the reason he was being laid off was because ICP was losing money and because Marco Velasco had been rehired to take over operations, which was the job Busse had been doing.

Busse testified that Botello never told him that he had cancelled the employment agreement, and it was not until the last day of his employment that he learned that Botello did not intend to pay him severance pay as provided in the agreement. According to Busse, Botello told him he was not getting a severance

5

because he was being terminated for poor performance, which was not the reason Botello had originally given him. Busse testified that he filed a claim with the TWC and that it took him approximately eight to ten months to find other employment.

Busse also explained that the original idea for which he was hired never materialized. According to Busse, his employment transitioned away from marketing ICP's brand because he and Botello never picked a specific product line to market. Busse explained that he moved into the production side because there were no products to sell. Busse testified that despite the transition in his employment, Botello never cancelled or suggested revising the employment agreement.

Velasco, the plant coordinator at ICP, testified that he met Busse when he was hired. Velasco testified that although Busse claims he was in sales, Busse was a "production guy" who had not made any sales. Velasco testified that Botello was not at trial because he was meeting with a customer. Courtney Davis testified that in 2013, she began working for ICP in operations and support with Busse. Davis testified that she had only known Busse to be a production person, and she was not aware that he was in sales.

The trial court affirmed the TWC's final administrative decision awarding Busse's claim for $51,000 in unpaid wages in the form of severance pay, finding

6

that substantial evidence supports the TWC's decision. ICP appealed the trial court's final judgment.

## ANALYSIS

ICP complains that there is not substantial evidence to support the TWC's administrative decision requiring ICP to pay contractual severance benefits to Busse. According to ICP, the trial court failed to apply the proper standard of review or did so erroneously. ICP argues that the trial court was required to analyze all evidence supporting the administrative decision and all undisputed contrary evidence, but the trial court failed to do so.

Busse filed his wage claim with the TWC pursuant to the Texas Payday Act ("the Act"). *See* Tex. Lab. Code Ann. § 61.051 (West Supp. 2017); *see also id.* §§ 61.001-.095 (West 2015 & West Supp. 2017). Under the Act, "wages" includes severance pay owed to an employee under a written agreement with the employer. *Id.* § 61.001(7)(B) (West 2015). The Act provides for administrative review of employee claims and for judicial review of final administrative decisions. *Tex-Fin, Inc. v. Ducharne*, 492 S.W.3d 430, 438 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see* Tex. Lab. Code Ann. § 61.062(a) (West 2015). A TWC examiner analyzes an employee's wage claim and issues a preliminary wage determination order that either dismisses the wage claim or orders the payment of wages. Tex. Lab. Code

7

Ann. § 61.052(a) (West 2015). A party may appeal the TWC's preliminary wage determination to the Tribunal, which may modify, affirm, or rescind a preliminary wage determination order. *Id.* § 61.059 (West 2015).

The Act allows a party to initiate a further appeal before the TWC to review the order of the Tribunal, and at that point, the TWC issues a final order that is subject to judicial review. *Id.* §§ 61.0612, 61.062 (West 2015). A party who has exhausted all the administrative remedies under the Act may bring a suit to appeal the TWC's final order. *Id.* § 61.062(a) (West 2015). An appeal from a final order is by trial de novo with the substantial evidence rule being the standard of review. *Id.* § 61.062(e) (West 2015).

We review the trial court's judgment de novo and determine whether the evidence introduced before the trial court shows facts in existence at the time of the TWC's decision that reasonably support the decision. *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). We may not set aside a decision by the TWC unless it was made without regard to the law or facts, and as a result was unreasonable. *Id.* A trial court reviews the TWC's final order on a wage claim to determine whether there is substantial evidence to support the TWC's decision. *Ducharne*, 492 S.W.3d at 438-39. We must decide whether the evidence presented to the trial court established that substantial evidence existed to support the TWC's

decision. *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 294 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Substantial evidence is more than a mere scintilla but need not be a preponderance. *McCrory v. Henderson*, 431 S.W.3d 140, 142 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We presume that the action of the TWC is valid, and the party seeking to set aside the decision has the burden of showing that less than substantial evidence supports that decision. *Ducharne*, 492 S.W.3d at 439. The TWC is the primary fact-finding body, and we do not weigh the evidence to decide whether the TWC made the correct decision. *Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984); *Kaup*, 456 S.W.3d at 294. We may not substitute our judgment for that of the TWC on controverted issues of fact. *Brinkmeyer*, 662 S.W.2d at 956.

We focus our review on the parties' written agreement, which was submitted before the trial court, and when interpreting a contract, our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We give the terms of the contract their plain and ordinary meaning unless the contract indicates otherwise, and we examine the writing as a whole to harmonize and give effect to all of the contract's provisions so that none will be rendered

meaningless. *Dynegy v. Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We must enforce an unambiguous contract as it is written without considering parol evidence. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). A contract is not ambiguous merely because the parties advance conflicting interpretations. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

The plain language of the parties' written agreement clearly provides that Busse's employment with ICP was at-will, and that either party could terminate the relationship at any time with or without cause, and that should ICP terminate the relationship in any fashion, ICP would pay Busse severance pay in the amount of his original base salary for up to six months or until Busse found other employment. The agreement states that Busse's original base salary was $8500 per month. The agreement also includes a handwritten notation under the severance pay provision that was initialed by the parties and which states "six months [seco]nd year." The agreement provided for the sole contingency that Busse work for ICP for two years to receive six months' severance pay. *See Tex. Workers' Comp. Ins. Fund v. Tex. Emp't Comm'n*, 941 S.W.2d 331, 334 (Tex. App.—Corpus Christi 1997, no writ). The agreement does not mention or make reference to any other conditions between

the parties concerning severance pay. If ICP had intended to place additional conditions other than length of employment, it could have done so. *See Ducharne*, 492 S.W.3d at 441-42. There is also no evidence of any written changes to the agreement or evidence that the parties cancelled the agreement. *See id.*

The record shows that Busse's base salary was $8500 per month, he worked for ICP for more than two years, and after ICP terminated him, it took Busse more than six months to find other employment. We conclude that substantial evidence exists to support the TWC's administrative decision that ICP owes Busse $51,000 in unpaid wages in the form of severance pay based on the parties' agreement. We further conclude that the trial court properly granted judgment affirming the TWC's decision.

ICP also argues that the trial court erroneously applied a measure of damages based upon an employment agreement that was never fulfilled and chose to enforce one of the agreement's provisions while ignoring others, and that Busse had already received a portion of the severance pay that the TWC awarded. The record shows that ICP only pleaded for judicial review of the TWC's administrative decision, and because the TWC's authority is limited to evaluating employee wage claims under the Texas Payday Law, the TWC did not consider ICP's breach of contract claim or its claim for overpaid wages. *See Johnson v. Oxy USA, Inc.*, 533 S.W.3d 395, 401-

11

02 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We need not address ICP's arguments on appeal concerning these claims because they are not properly before this Court. *See id.* We overrule ICP's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 13, 2018
Opinion Delivered August 16, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.